[Civ. No. 3927.   First Appellate District, Division One.—September 15, 1921.]

## LYGIA JOHNSON, Respondent, v. WINN W. DAVIDSON et al., Appellants.

[1] TRUST — PROPERTY PURCHASED WITH SURPLUS EARNINGS OF LAW
    BUSINESS—CONTRACT BETWEEN ATTORNEY AND OFFICE EMPLOYEE
    —EVIDENCE—FINDINGS.—In this action against the heirs of a
    deceased attorney to establish a joint ownership in real property,
    purchased with the surplus earnings of decedent's business, pur-
    suant to an alleged agreement between such attorney and the
    plaintiff, who performed services in his office, the evidence sus-
    tains the findings that an undivided one-half interest in the prop-
    erty was held in trust for the plaintiff by the deceased.

[2] EVIDENCE—DECLARATIONS OF DECEASED PERSON—RIGHTS OF HEIRS
    —INADMISSIBILITY.—Declarations of a person since deceased but
    in support of his own interests are not admissible in evidence in
    favor of those who claim rights which the declarations would
    maintain.

[3] ATTORNEY AT LAW—EMPLOYMENT OF ASSISTANT—COMPENSATION—
    PERCENTAGE OF RECEIPTS—NATURE OF CONTRACT.—It is lawful for
    an attorney to employ any person to take charge of the manage-
    ment of the work to be done in his office to the extent of drawing
    pleadings and papers necessary to be drawn by such attorney in

2.   Admissibility of declarations of deceased against third persons,
note, 94 Am. St. Rep. 672.

3.   What constitutes practicing law, notes, 18 Ann. Cas. 658; Ann.
Cas. 1918C, 131.

his practice and to agree to pay for such services a fixed percentage of the receipts of the attorney from his clients, and an agreement of that character is not one to become partners .in the practice of law, but an agreement to hire the person as an assistant or clerk, the wages being fixed by reference to the percentage of the receipts. (Opinion of supreme court on denial of hearing.)

[4] ID.—INVESTMENT OF RECEIPTS IN LAND — PUBLIC POLICY. — An agreement between an attorney and his clerk that the former should invest in land the percentage of the office receipts due the latter for services is not against public policy. (Opinion of supreme court on denial of hearing.)

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Bernard J. Flood, Judge. Affirmed.

The facts are stated in the opinion of the court.

McWilliams & Hatfield and Paul A. McCarthy for Appellants.

Sullivan & Sullivan and Theo. J. Roche for Respondent.

KERRIGAN, J.—This is an appeal from a judgment declaring that a certain parcel of real property situate in the city and county of San Francisco was held by W. W. Davidson at the time of his death for the joint benefit of himself and the plaintiff, each owning an undivided one-half ·interest therein.

The defendants and appellants are the sons of the deceased, one of them being the administrator of the estate. It is their contention that the contract with Davidson relied upon by the plaintiff to establish her claim to the said undivided interest constituted a partnership to practice law; and that since the plaintiff was not an attorney at law the contract was contrary to public policy and void, hence affording no foundation for her claim. They also contend that the court erred in refusing to admit certain evidence.

W. W. Davidson for more than twenty years preceding his death was a duly admitted practicing attorney, devoting his attention principally to divorce litigation. From January, 1904, to January, 1913, he was a teacher in one of the

public night schools of San Francisco. He had for many years been addicted to the excessive use of intoxicating liquors, which habit manifested itself periodically, and at such times the volume of his law business would be seriously diminished. In January, 1904, he was enjoying one of these lapses, which had lasted for about three months, during which time he had not visited his office, and had incurred debts amounting to about two thousand dollars. At this time he encountered the plaintiff. She had been one of his pupils in the public school, and in the conversation which ensued she informed Davidson that she had been following the occupation of nurse, but was at that time disengaged, and she asked him if he could help her get employment. He replied that he needed a clerk in his office. To her objection that she knew nothing of stenography or type-writing or the business of a law office he insisted that she could learn the duties of the position he offered her. Upon this phase of the case the plaintiff herself testified as follows: ''We went down to the office. We talked about the work, and he told me what it was, what kind of work he did, and his price for it. We talked a lot about his desire to get away from drink. I told him about the experience I had had in nursing and about how I had taken care of men who had been addicted to drink, and that I thought if he would try we could soon get him to quit drinking, and he said if I could do that it would be a great thing for him. He gave me the keys to the office that night and told me to come the following morning, and to do any service in the morning that he would tell me, and that he would try to tell me what kind of work to do and what to do as my services in the office; I was to do anything that he wanted me to do and to help him break away from drink. As compensation for that I was to have one-eighth, after the expenses of the office were paid, of all the income that came in from the office. I was to keep the office open evenings while he was at school where he was a teacher, and the salary from the school was to be included· in the money taken in at the office.''

The plaintiff learned typewriting, and shortly after her employment, having progressed sufficiently to do so, she prepared complaints, answers, cross-complaints, demurrers, orders for and affidavits of publication of summons in

divorce cases, and the like; bills of sale and bankruptcy petitions. She frequently consulted with ' clients about divorces, ascertained the facts and prepared the necessary pleadings. While not admitted to practice she became very proficient in the particular work of that office, leaving little for Davidson to do but the actual conduct of proceedings in court. In addition to the performance of these duties, she rehabilitated Davidson and restored him to his earning capacity. At the beginning of her employment her share of the profits of the business was but twelve dollars a month, but her income increased as time went by, and at the end of 1905 she was receiveing as her share of the income from seventy-five dollars to ·eighty dollars per month. In December, 1905, she had several conversations with Davidson with regard to an increase of her interest in the income of the business. Realizing the prosperous condition of his business and the volume and character of the work done by the plaintiff, he agreed that she should have one-half the net income of the business including his salary as school-teacher, after deducting therefrom the expenses of the office and the personal living expenses of both parties. Four months later it was agreed by plaintiff and Davidson that their savings should be invested by Davidson in real property, each to own a one-half interest in any property so purchased, and it was under this arrangement that he used their surplus earnings in the purchase of the property described in the complaint. The deceased frequently referred ·to the plaintiff as his partner in the law business and in the ownership of said real property.

[1] Our examination of the record in this case leads us to the conclusion that the evidence abundantly sustains the findings of the trial court that an undivided one-half interest in the real property in question was held in trust for the plaintiff by the deceased.

Where, as in this state, a license or certificate is required by statute as a condition for one to practice law, an agreement to engage in such practice without a license or certificate is ordinarily. held illegal and void. (13 Corpus Juris, 423.) Part of the services performed by the plaintiff in the office of Davidson were of a legal nature and consti-

tuted the practice of law. It is not essential that one actually participate in the trial of causes in order to practice law. To draw up pleadings and findings, to examine witnesses and prepare cases for trial, as the evidence shows the plaintiff did, is to practice law. But however this may be, and conceding that the business arrangement, whether it constituted a partnership or not, was contrary to public policy and void, still we think the plaintiff was entitled to recover. If the original contract between the plaintiff and Davidson were void, as claimed, nevertheless that agreement having been performed, and the money derived therefrom having been collected and invested in real property by Davidson for the joint benefit of both parties, this action to enforce a trust as to the plaintiff's one-half interest in such property against the successors of Davidson cannot be affected by any illegality in the original agreement, through the performance of which the purchase price of the property was acquired. It cannot be doubted that courts will refuse to enforce contracts which have for their object some act which is contrary to law or sound public policy. But where, as here, the action is not to enforce such contract, but is to establish title to property acquired under such a contract, the action may be maintained. The difference between the enforcement of an illegal contract and a suit to recover property acquired with funds derived through such a contract has always been recognized by the courts. In *Andrews* v. *New Orleans Brewing Assn.*, 74 Miss. 362, [60 Am. St. Rep. 509, 20 South. 837], it is held that one in possession of the gains and profits of an executed transaction cannot retain them as against another party thereto on the ground that the business which produced the fund was illegal. In the case of *Brooks* v. *Martin*, 2 Wall. (U. S.) 70, [17 L. Ed. 732, see, also, Rose's U. S. Notes], it is held that after a partnership contract, admittedly against public policy, has been carried out, and money contributed by one of the partners had passed into other forms of property, a partner in whose hands the profits are cannot refuse to account for and divide them on the ground of the illegal character of the original contract.

In *De Leon* v. *Trevino,* 49 Tex. 89, [30 Am. Rep. 101], it is held that although a contract may be illegal, it does not follow that it is illegal or immoral for the parties to it after its completion to fairly settle and adjust the profits and losses which have resulted from it. The vice of the contract does not enter into such settlement. It appears to be well settled that after an illegal contract has been executed one party in possession of all the gains resulting from the illicit transactions will not be permitted to interpose the objection that the business which produced the fund was one conducted in violation of law. (*Gilliam* v. *Brown,* 43 Miss. 641; *McDonald* v. *Lund,* 13 Wash. 412, [43 Pac. 348].) The doctrine is thus stated in 13 Corpus Juris, page 505: "Certainly when the profits of an illegal transaction have been actually divided or invested in other property, the illegality of the other transaction in no way affects the title to such property or subsequent dealings in regard to it." (See, also, *Wayman Inv. Co.* v. *Wessinger,* 13 Cal. App. 108, [108 Pac. 1022]; *California Cured Fruit Assn.* v. *Stelling,* 141 Cal. 714, [75 Pac. 320]; *Blochman* v. *F. G. Investment Co.,* 177 Cal. 762, [171 Pac. 943].)

In the case at bar the funds of the plaintiff, derived, it is true, from a transaction not legally enforceable, were invested in the real property for her benefit as the result of an agreement collateral to and independent of the illegal contract, and under the authorities cited this action to enforce the trust is clearly maintainable.

[2] It is also claimed that the court committed error in excluding evidence of statements made by Davidson tending to show that the property belonged exclusively to him. The rulings of the court in this behalf were justified by established rules of evidence. "Declarations of a person since deceased but in support of his own interests are not admissible in evidence in favor of those who claim rights which the declarations would maintain." (*Poorman* v. *Miller,* 44 Cal. 270.) This rule was approved in the case of *Hausman* v. *Hausling,* 78 Cal. 286, [20 Pac. 570], where, in referring to the admission in evidence of certain letters written by the defendant, the court said: "It is entirely clear that the letters were not admissible in evidence and that the objections to them should have been sustained. A

litigant is not permitted to strengthen his case by his own declarations, whether written or verbal. They may be used against him but not for him.''

The judgment is affirmed.

Richards, J., and Waste, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 14, 1921, and the following opinion then rendered thereon:

THE COURT.—The petition for a rehearing in the supreme court after decision of the district court of appeal in this cause is denied.

That portion of the opinion of the district court of appeal declaring that the services performed by the plaintiff in the law office of the deceased, W. W. Davidson, constituted the practice of law is, in our opinion, not warranted by the record. [3] It is lawful for an attorney to employ any person to take charge of the management of the work to be done in his office to the extent of drawing pleadings and papers necessary to be drawn by such attorney in his practice, and to agree to pay such person for such services a fixed percentage of the receipts of the attorney from his clients. Such an agreement is not an agreement to become partners in the practice of law. It is an agreement to hire the person as an assistant or clerk in the office, the wages being fixed by reference to the fixed percentage of the receipts of the office. The evidence and the findings show and the findings declare that this was the relation between the plaintiff and the deceased attorney. [4] The additional agreement, whether made at the same time as the other or subsequently, that the attorney should invest the money due to the plaintiff for such services in land was in nowise against public policy. This is decisive of the case, and the discussion upon the subject of the effect of the supposed partnership should be disregarded. There was no partnership for the practice of law, or any other partnership relation between the parties.

The statement to the effect above set forth was not necessary to the decision of the district court affirming the judgment and we, therefore, allow that judgment to stand.

Shaw, C. J., Wilbur, J., Lennon, J., Sloane, J., and Shurtleff, J., concurred.