[S. F. No. 20290. In Bank. Sept. 20, 1960.]

PHILLIP NEAL CRAWFORD, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Wallace S. Myers for Petitioner.

Garrett H. Elmore for Respondent.

THE COURT.—Petitioner seeks the annulment of a resolution adopted by eight of the thirteen members of the Board of Governors of The State Bar present and voting that he be publicly reproved for violation of rule 3, Rules of Professional Ethics (52 Cal.2d 896). The local committee had recommended that no disciplinary action be taken.

Petitioner, now 35 years old, was admitted to the bar in 1953, after which he practiced in Sacramento for approximately 14 months. His father, Howard G. Crawford, was admitted in 1923 and practiced in Lakeport continually thereafter. In May 1954, after the Board of Governors had recommended Howard's disbarment, petitioner and his father formed a partnership, the profits from which were to be divided equally. Formal announcements of the partnership were sent out at that time. Howard was disbarred on September 16, 1954. After his disbarment he remained in the same office, kept his secretary, and continued his practice as a tax consultant. His name was no longer used as an attorney, and he did not appear in court, but he did confer directly with clients with respect to the preparation of deeds and birth certificates, probate matters, escrows and real estate deals, mining claims, and the dissolution of a partnership. He also referred his tax clients to petitioner for other legal advice. Petitioner and Howard continued to divide the profits from the entire business equally.

Before the formation of the partnership, the legend on the office window had read "H. G. Crawford—Attorney at Law-Notary Public," the stationery bore the letterhead "Law Offices of H. G. Crawford," and the bank accounts were maintained in the name of H. G. Crawford. No change was made in any of these until after Howard was disbarred. The window sign was then changed to read "Crawford & Crawford—Attorney at Law-Tax Consultant." The new stationery bore the heading "Offices of Crawford & Crawford" with "Phil N. Crawford" designated as "Attorney at Law" and "H. G. Crawford" as "Tax Consultant" in the top left margin. The letterhead had only a single phone number and address. Letters relating to all matters in the office were mailed to clients on this stationery, and many relating to the tax practice, to billing in regard to the legal practice, and to escrows, mining claims and the like were signed by H. G. Crawford without

any title or identification other than that on the letterhead. Envelopes, checks, and statements bore only the firm name without any identification as to its members.

In October 1954, new bank accounts in the name of "Crawford & Crawford" were opened by Phil and Howard acting jointly, and the old H. G. Crawford accounts were closed. The printed signature cards relative to the new accounts contained the following statement over the signature of both Crawfords: "(2) That it is mutually understood that the undersigned doing business under the trade or partnership name of Crawford & Crawford are owners as co-partners and constitute all the members of the partnership. . . ." Although the form of the card provided for the alternative, Howard was not thereon designated merely as an authorized signer on the account of petitioner as sole owner.

All the receipts from petitioner's business and from Howard's tax consultations were deposited in these accounts. Firm costs were advanced and all operating expenses paid out of the Crawford & Crawford account. Each withdrew what he needed with the understanding that withdrawals would be kept as even as possible. Only one set of books was maintained.

On March 25, 1955, during the period of disbarment, Howard made a sworn statement before petitioner as notary public on a creditor's claim of "Crawford and Crawford" that "he *is* one of the *members* of the *firm* of Crawford and Crawford" [italics added]. On February 2, 1955, petitioner, before Howard as notary public, had made an identical sworn statement on a similar creditor's claim.

Howard had had a large practice in Lakeport. Assets connected with his law office, including accounts receivable, totaled approximately $41,265.28. Petitioner's position is that in keeping with his father's wish not to abandon his clients and to stay in Lakeport to rehabilitate himself, petitioner employed his father to work for him as a law clerk, bookkeeper, and office manager, and to conduct a tax practice. Petitioner testified that his father was to receive about $400 per month for these services and that his father's withdrawals beyond that sum were to constitute a partial payment for his assets. There was no written agreement of sale, however, nor was any agreement reached as to the valuation of these assets. It was not until March 1957, after petitioner was informed of the present investigation, that he undertook an accounting of past operations, a valuation of assets, and a definite fixing of Howard's salary including withholding tax. At about the same time

petitioner's law office, bank accounts, letterheads and so forth became clearly identified, and Howard moved to another location to conduct an independent tax practice.

The local committee found that although petitioner may have acted imprudently in allowing his father to continue working under circumstances that might have the appearance of a partnership for the practice of law, he did so in good faith and there was no actual partnership; that his father did not practice law; that petitioner was indebted to his father for the physical assets; and that the fact that all proceeds went into a common fund did not necessarily prove a partnership. Petitioner contends that these are the only supportable findings. He further contends that the use of the name "Crawford & Crawford" was not improper.

Petitioner relies upon section 15007, subdivisions (3), (4)(a) and (4)(e) of the Corporations Code and *Johnson* v. *Davidson,* 54 Cal.App. 251 [202 P. 159], to support his contention that no partnership existed and that the relationship was not improper and was undertaken in good faith.

Section 15007, subdivision (3) in part provides: "The sharing of gross returns does not of itself establish a partnership. . . ." Section 15007, subdivision (4), provides: "The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment:

"(a) As a debt by installments or otherwise.

". . . . . . . . . . . .

"(e) As the consideration for the sale of good will of a business or other property by installments or otherwise."

*Johnson* v. *Davidson, supra,* affirmed a judgment for plaintiff in an action to recover an interest in real property purchased by an attorney. Plaintiff had been employed by the attorney as a law clerk whose duties included the drawing of pleadings and the consultation with clients to ascertain facts for the preparation of the pleadings. Plaintiff had received one-half the net profits of the business for her services, and the property in question had been purchased pursuant to an agreement to invest the surplus savings of the office in real property in which each would have a one-half interest. In denying a hearing in this court the court stated: "It is lawful for an attorney to employ any person to take charge of the management of the work to be done in his office to the extent of drawing pleadings and papers necessary to be drawn by

such attorney in his practice, and to agree to pay such person for such services a fixed percentage of the receipts of the attorney from his clients. Such an agreement is not an agreement to become partners in the practice of law." (54 Cal. App. 251, 257.)

We are of the opinion that the foregoing authorities do not justify the relationship between petitioner and his father in the present case and that petitioner has failed to sustain his burden of showing that there was no partnership within the meaning of Corporations Code, section 15006 : '' (1) A partnership is an association of two or more persons to carry on as co-owners a business for profit.'' The use of a firm name, the declarations of coownership, the continuation of equal withdrawals of sums from the commercial account coupled with the complete failure to attempt an accounting or valuation until these proceedings were under way, and the sharing of profits from the tax business, even though petitioner was in no way responsible for the attraction of tax clients or the performance of that business, makes it apparent that petitioner and his father not only held themselves out as partners, but that they actually considered themselves to be partners.

Petitioner does not contend that *Johnson* v. *Davidson* implies that an actual partnership between a member of the bar and a layman is not prohibited by the profit-sharing proscriptions of rule 3, whether or not the layman is actually engaged in acts constituting the practice of law. Not only does the sharing of profits in such a situation tend to encourage solicitation and the practice of law by a layman (see, *e.g.*, Ethics Opinion No. 269, American Bar Ass'n; Ethics Opinion No. 201, New York County Lawyer's Ass'n), it also tends to lessen the independence from the influence of a layman necessary for an attorney to carry out his responsibilities. (See 10 Cal.L.Rev. 146.)

Moreover, petitioner's reliance on *Johnson* v. *Davidson* is misplaced. That case was decided before the adoption of rule 3, and the court therein was principally concerned with the question whether the plaintiff had been a partner in a law firm and had practiced law. The question whether the fee splitting might otherwise be improper was not involved. In *Cain* v. *Burns*, 131 Cal.App.2d 439 [280 P.2d 888], the court, following the implications of *Hildebrand* v. *State Bar*, 18 Cal. 2d 816, 827 [117 P.2d 860], characterized as fee splitting an arrangement in which an investigator was to receive a given percentage of the profits in all cases in which he was employed,

since he was "working on a percentage basis without regard to the work done, the time consumed or the difficulties encountered." Committees on ethics have repeatedly stated that employees should not be hired on a percentage basis because of the dangers of solicitation involved. (*E.g.,* Ethics Opinion No. 272, American Bar Ass'n; Ethics Opinion No. 122, New York County Lawyer's Ass'n; *cf.* Ethics Opinion No. 80, New York County Lawyer's Ass'n.) ▓▓ Furthermore, a managing clerk who receives half the profits has virtually the same position of control as an actual partner. Although an arrangement entered into for the sale of assets would not necessarily be improper if there were an agreed-upon maximum payment, and the payments were unrelated to employment (*cf. Hildebrand* v. *State Bar,* 18 Cal.2d 816 [117 P.2d 860]), it is apparent that payment of a percentage to Howard as an employee in itself would violate the provision of rule 3 that an attorney shall not directly or indirectly share compensation arising out of or incidental to professional employment. Insofar as *Johnson* v. *Davidson* is inconsistent with the views expressed herein, it is overruled.

▓▓ The board was also justified in finding that the name Crawford & Crawford on the office window and letterheads gave and was intended to give the impression that petitioner and his father were partners. Petitioner invokes the practice of retaining the names of deceased partners in the firm name by 22 San Francisco law firms as justifying the use of the two names here. That practice, however, is proper only if local custom permits it and does not mislead. The use of the name here is not in accordance with local custom and it does mislead, even if, as petitioner testified, his father told all clients of his disbarment. There was evidence that clients came to Howard for services that could only be performed because of the arrangement with petitioner. There was also evidence that Howard's business served as a feeder for petitioner's practice. Whether or not there was an actual partnership, and whether or not Howard was actually practicing law, the acts encompassed by the board's findings are proscribed by rule 3. That rule prohibits a member of the bar from employing another to solicit and from "directly or indirectly" aiding or abetting the unauthorized practice of law. ▓▓ The unauthorized practice of law includes the mere holding out by a layman that he is practicing or is entitled to practice law. (Bus. & Prof. Code, § 6126.)

▓▓ Similar proscriptions of the Canons of Ethics of the

American Bar Association support our conclusion herein. (See Drinker on Legal Ethics, 205.) Committees on ethics have uniformly ruled that the name of a layman may not appear as a partner even if he is not in fact practicing law. (*E.g.*, Ethics Opinion No. 412, New York City Bar Ass'n; Ethics Opinion No. 269, American Bar Ass'n.) Nor may the name of an attorney appear as connected with the business of a layman practicing in a related profession (*e.g.*, Ethics Opinions Nos. 737, 738, 742, New York City Bar Ass'n); nor may the name of a layman appear as in charge of a segment of the attorney's business (*e.g.*, Ethics Opinion No. 54, American Bar Ass'n; Ethics Opinions Nos. 341, 699, New York City Bar Ass'n). These usages are proscribed not only because of the possible misrepresentations and unauthorized practice of law, but also because the layman's business would tend to become a feeder of business to the lawyer, particularly when the layman's business is one related to the practice of law. (*E.g.*, Ethics Opinion No. 239, American Bar Ass'n; Ethics Opinion No. 398, New York County Lawyer's Ass'n; Ethics Opinion No. 412, New York City Bar Ass'n.)

The board's finding that petitioner aided and abetted his father to practice law is also supported by the evidence. Howard gave advice concededly legal in nature directly to a client regarding certain mining claims. Although it was given in the guise of ''friendly advice,'' a fee was charged therefor by Crawford & Crawford. Howard handled an entire probate matter, including conferences with the client, with petitioner simply appearing in court on the matter. Howard also handled an escrow that involved considerable controversy as to compliance with the underlying contract, yet he conferred with the clients alone and took full responsibility in the matter. Howard also performed other services such as aiding in the culmination of a loan that involved the dissolution of a partnership. He also performed various routine services for his tax clients that were entirely unrelated to his tax practice for which Crawford & Crawford charged fees.

In *People* v. *Merchants Protective Corp.*, 189 Cal. 531, 535 [209 P. 363], we stated that the practice of law ''in a larger sense . . . includes legal advice and counsel and the preparation of legal instruments and contracts by which legal rights are secured although such matter may or may not be depending in a court.'' Although Howard's services might lawfully have been performed by title companies, insurance companies, brokers, and other laymen, it does not follow that

when they are rendered by an attorney, or in his office, they do not involve the practice of law. People call on lawyers for services that might otherwise be obtained from laymen because they expect and are entitled to legal counsel.　　　Attorneys must conform to professional standards in whatever capacity they are acting in a particular matter. (*Alkow* v. *State Bar*, 38 Cal.2d 257, 263 [239 P.2d 871]; *Libarian* v. *State Bar*, 21 Cal.2d 862, 865 [136 P.2d 321].) The handling of an escrow is an example of such a dual service. That service is limited by statute to licensed escrow agents, or to certain excepted groups including attorneys. (Fin. Code, § 17000 et seq.) It is immaterial that most of the persons dealing with him knew that Howard had been disbarred.

　　　Petitioner contends that the acts complained of were not improper for they might have been performed by a law clerk. He relies on *In re McKelvey,* 82 Cal.App. 426 [255 P. 834], which held that a disbarred attorney could do research, write briefs, and draft pleadings without engaging in the practice of law. (See also *Johnson* v. *Davidson, supra.*) In *Ferris* v. *Snively,* 172 Wash. 167 [19 P.2d 942, 945-946, 90 A.L.R. 278], the Supreme Court of Washington described the function of law clerks:

"The line of demarcation as to where their work begins and where it ends cannot always be drawn with absolute distinction or accuracy. Probably as nearly as it can be fixed, and it is sufficient to say that it is work of a preparatory nature, such as research, investigation of details, the assemblage of data and other necessary information, and such other work as will assist the attorney in carrying the matter to a completed product, either by his personal examination and approval thereof or by additional effort on his part. The work must be such, however, as loses its separate identity and becomes either the product, or else merged in the product, of the attorney himself."

The record shows that Howard acted independently of petitioner both in regard to matters involving legal advice, and to matters that can be characterized as such because performed in a law office, and that petitioner merely had knowledge of the existence of them but not of their progress or disposition.

　　　Petitioner also relies upon certain language in *In re McKelvey*: "The statement that petitioner has been 'giving advice to clients . . .' is based upon incidental matters of such slight importance that they should not be regarded as constituting an attempt to practice law." (82 Cal.App. 426,

429.) The individual acts as such, however, are not necessarily determinative. A consideration of the entire pattern of conduct is necessary. (See *Dudney* v. *State Bar*, 8 Cal.2d 555, 561 [66 P.2d 1199].) The entire pattern of conduct here, the relative experience of each man, and the conduct of a tax practice held out as performed either as an employee or a partner of petitioner, as well as the fact that "the father had hundreds of clients in the area he did not wish to abandon," show that more than incidental matters of slight importance were involved.

The board properly considered the fact that petitioner is young and had limited professional experience, that he has never been the subject of any disciplinary proceeding, that he has a good reputation in the community, and that the activities herein complained of sprang from a commendable but misdirected filial devotion to his father.

The State Bar correctly concluded that Phillip Neal Crawford should be publicly reproved, and this opinion shall serve as that reproval.