TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

------------------------------
                         :

OPINION            :

                         :

of               :   No. 87-302

                         :

JOHN K. VAN DE KAMP   :   <u>JULY 18, 1988</u>
Attorney General      :

                         :

JACK R. WINKLER      :
Assistant Attorney General :

                         :

--------------------------------------------------------------

THE HONORABLE JAMES F. PENMAN, CITY ATTORNEY OF THE CITY OF SAN BERNARDINO, has requested an opinion on the following questions:

1.     Does Government Code section 91001.5 authorize a city attorney of a charter city to prosecute violations of the Political Reform Act when the city charter has been amended to remove the city attorney's authority to prosecute misdemeanor violations of state law?

2.     May a city attorney with authority to prosecute violations of the Political Reform Act lawfully undertake to receive information from a member of the city council regarding the member's financial interest on a confidential basis under the attorney-client privilege and advise the member whether official action the member has taken or may take would violate the Political Reform Act?

CONCLUSIONS

1.     Government Code section 91001.5 does not authorize a city attorney of a charter city to prosecute violations of the Political Reform Act when the city charter has been amended to remove the city attorney's authority to prosecute misdemeanor violations of state law.

2.     A city attorney who has not exercised his authority to prosecute a member of the city council for violations of the Political Reform Act may lawfully receive information from the member regarding his or her financial interests on a confidential basis under the attorney-client privilege and advise the member whether official action the member has taken or may take would

violate the Political Reform Act but would then be disqualified from prosecuting any such violations.

ANALYSIS

Section 91001.5[1] provides:

"In any case in which a district attorney could act as the civil or criminal prosecutor under the provisions of this title [Title 9, commencing at section 81000 known as the Political Reform Act of 1974, the "Reform Act" herein], the elected city attorney of any charter city may act as the civil or criminal prosecutor with respect to any violations of this title occurring within the city."

We are asked whether this statute authorizes a city attorney of a charter city to prosecute violations of the Reform Act when the city charter has been amended to remove the city attorney's authority to prosecute misdemeanor violations of state law. Before examining the city's power to remove prosecutorial authority from its city attorney by charter amendment we consider the nature of the prosecutorial powers granted to city attorneys by the Reform Act. It is significant to note at the outset that section 91001 of the Reform Act makes the Attorney General and district attorneys responsible for enforcing the criminal provisions of the Reform Act and also makes them civil prosecutors with the primary responsibility for enforcement of the civil penalties and remedies of the Reform Act. It is also significant to note that section 91001.5 does not extend the district attorney's authority to enforce the Reform Act to all city attorneys in the state, but only to those in charter cities and then only when the city attorney is elected rather than appointed.

The wording of section 91001.5 is that the elected city attorney of a chartered city "may" act as the civil or criminal prosecutor with respect to violations of the Reform Act within the city. Section 14 provides that "shall" is mandatory and "may" is permissive. Section 5 provides that these definitions shall govern the construction of the Government Code unless the provision or context otherwise requires. By including the Reform Act in the Government we believe the framers intended to incorporate the definitions of words set forth in that code in the Reform Act as well except as otherwise provided in the Reform Act. The Reform Act does not otherwise define "may". Thus we construe the authority granted city attorneys by section 91001.5 as permissive rather than mandatory. This means that the section grants the city attorneys to which it applies the authority but not the duty to act as prosecutor of violations of the Reform Act within the city. (Cf. Montgomery v. Superior Court (1975) 46 Cal.App.3d 657, 666, in which the court construed section 41803.5 providing that the city attorney of a general law city "may" prosecute certain criminal actions as permissive only and that the city council could prohibit its city attorney from prosecuting such actions by ordinance.)

Article XI, section 5 of the California Constitution provides in part:

_____

[1]Section references are to the Government Code unless otherwise indicated.

"(a) It shall be competent in any city charter to provide that the city governed thereunder may make and enforce all ordinances and regulations in respect to municipal affairs, subject only to restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws. City charters adopted pursuant to this Constitution shall supersede any existing charter, and with respect to municipal affairs shall supersede all laws inconsistent therewith.

"(b) It shall be competent in all city charters to provide, in addition to those provisions allowable by this Constitution, and by the laws of the State for: . . . and (4) plenary authority is hereby granted, subject only to the restrictions of this article, to provide therein or by amendment thereto, the manner in which, the method by which, the times at which, and the terms for which the several municipal officers and employees whose compensation is paid by the city shall be elected or appointed, . . ."

If the subject of granting or prohibiting authority of the city attorney to prosecute violations of the Reform Act is a "municipal affair" within the meaning of article XI, section 5, an amendment to the city charter removing the city attorney's authority to prosecute misdemeanor violations of state law would supersede the provisions of section 91001.5. However, a court might well consider the subject of enforcement of the Reform Act to be a matter of statewide concern and not a municipal affair and thus an "other" matter subject to the general laws, including the Reform Act, within the meaning of the constitution. In determining whether a matter is a municipal affair or of statewide concern, the courts will give great weight to the purpose of the Legislature or the electorate in enacting general laws which disclose an intent to preempt the field, but the fact that the Legislature or the electorate has attempted to deal with a particular subject on a statewide basis is not determinative of the issue. (Bishop v. San Jose (1969) 1 Cal.3d 56.)

Generally, local governments do not lack the power, nor are they forbidden by the Constitution, to legislate upon matters which are not of a local nature, nor is the Legislature or the electorate forbidden to legislate with respect to the local municipal affairs of a home rule municipality, but in the event of conflict or intended preemptive state legislation, the question becomes one of predominance or superiority as between general state laws on the one hand and the local regulations on the other. (Bishop v. San Jose, supra, 1 Cal.3d 56.) Since article XI does not define municipal affairs, the courts will decide, under the facts of each case, whether the subject matter under discussion is of municipal or statewide concern and this question will be determined from the legislative purpose in each case. (Santa Clara v. Von Raesfeld (1970) 3 Cal.3d 239, 246.) However, we do not reach that question in this opinion because we have found no conflict between section 91001.5 and a charter amendment removing the city attorney's authority to prosecute violation of state laws (including the Reform Act) or any intent by the Legislature to preempt the subject of such a charter amendment by general law or any intent by the electorate to preempt the same subject in the Reform Act.

In Montgomery v. Superior Court, supra, 46 Cal.App.3d at pages 669-670, the court stated that the statutes concerning city attorneys did not preempt the subject of a city attorney's

duties and interpreted section 41803 to reflect a contrary legislative intent to defer to city government in matters pertaining to that subject. While Montgomery does not refer to the Reform Act we find nothing in that act which suggests any intent to preempt a city's determination regarding the city attorney's prosecutorial duties. Thus even if a city attorney's authority to enforce violation of the Reform Act within the city is not a "municipal affair" within the meaning of the constitution a city charter amendment removing the city attorney's authority to prosecute misdemeanor violations of state law, including the Reform Act, would not be in conflict with the general law or the Reform Act. Furthermore, article XI, section 5 (b) provides express constitutional authority for a city electorate to provide in its city charter that the office of city attorney shall be appointive rather than elective thus removing its city attorney from the operation of section 91001.5 and the Reform Act altogether.

We conclude that section 91001.5 does not authorize a city attorney of a charter city to prosecute violations of the Reform Act when the city charter has been amended to remove the city attorney's authority to prosecute misdemeanor violations of state law.

The second question asks us to assume that a city attorney has the authority to prosecute violations of the Reform Act under section 91001.5. We have already noted that section 91001.5 applies only to an elected city attorney of a chartered city. We are asked if such city attorney may lawfully receive information from a member of the city council regarding the member's financial interests on a confidential basis under the attorney-client privilege and advise the officer whether action the officer has taken or may take would violate the Reform Act. We assume that there is some provision in the city charter which purports to authorize or make it the duty of the city attorney to advise city officers in such manner.[2]

---

[2]Such a provision would be in the city's interest quite apart from the personal interests of council members. Under section 1090 a contract made for a city by the city council is void if any member of the council is financially interested in the contract. (Thomson v. Call (1985) 38 Cal.3d 633, 646.) The city council naturally looks to its city attorney to guide it on legal questions of city business. To properly advise the council on the validity of a city contract it is essential for him or her to find out what financial interests the members have which may relate to the contract. If members are able to convey that information to the city attorney with the assurance that it is subject to the attorney-client privilege and may not be revealed by the city attorney without their consent they are more likely to provide the information. On the other hand if they knew that the information they provided the city attorney could be used to prosecute them for violations of the Reform Act it is not likely they would provide much information. Protecting the validity of city contracts would provide a reason for such a provision in a city charter. There is a public entitlement to the effective aid of legal counsel in civil litigation and effective aid is impossible if opportunity for confidential legal advice is banned. (Sacramento Newspaper Guild v. Board of Supervisors (1967) 255 Cal.App.2d 51, 54.) The attorney-client privilege applies to public as well as to private clients. (Holm v. Superior Court (1954) 42 Cal.2d 500.)

Thus the second question posits a conflict between the city attorney's prosecutorial role and his or her duty to advise city officers. It seems clear that the function of advising a member of the city counsel whether past or proposed actions of the member violate the Reform Act after obtaining information from the member in confidence under the attorney-client privilege regarding the member's financial interests is in conflict with the function of prosecuting the member for violating the Reform Act.

There is nothing unusual or illegal about a public officer having authority or duties which may conflict with one another from time to time with one exception. Article III, section 3 of the California Constitution provides that the powers of government are legislative, executive and judicial and that persons charged with the exercise of one power may not exercise either of the others except as permitted by the Constitution. In the second question the two powers in question, prosecution and legal advice, are both executive powers so it presents no separation of powers problem. Many statutes may be cited which impose upon a single public officer separate duties which may conflict with one another. A pertinent example is found in the duties of the district attorney. Section 26,500 provides that the district attorney is the public prosecutor with the duty to conduct all prosecutions for public offenses and section 26520 provides that the district attorney shall render legal services to the county including legal advice to county officers. Authority has been given to counties to separate these duties by creating the office of county counsel (see §§ 27640 and 27642) but in several counties the district attorney still performs both these functions.

There are many "conflict of interest" laws designed to govern the conduct of public officers and employees when they are confronted with situations which involve a conflict of interest. Section 1090 prohibits public officers from being financially interested in any contract or sale made by them in their official capacity. Section 87100 in the Reform Act provides that no public official shall participate in making or attempting to influence a governmental decision in which he has a financial interest. There are other similar conflict of interest statutes applicable to specific situations. In general they all prohibit the public official from taking official action when he has a conflict of interest. The city attorney referred to in the second question must of course abide by all of such conflict of interest laws which apply to his or her conduct.

In addition to laws governing conflicts of interest a city attorney is also required to conform his or her conduct to the Rules of Professional Conduct of the State Bar of California. Rule 5-102 is pertinent to this opinion. It reads:

"(A) A member of the State Bar shall not accept professional employment without first disclosing his relation, if any, with the adverse party, and his interest, if any, in the subject matter of the employment. A member of the State Bar who accepts employment under this rule shall first obtain the client's written consent to such employment.

"(B) A member of the State Bar shall not represent conflicting interests, except with the written consent of all parties concerned."

These rules are as applicable to public lawyers as to other members of the State Bar. (People ex rel. Deukmejian v. Brown (1981) 29 Cal.3d 150.) Attorneys must conform to professional standards in whatever capacity they are acting in a particular matter. (Crawford v. State Bar (1960) 54 Cal.2d 659, 668.)

Having a public office which has duties and authorities which may conflict does not mean that they will always conflict. There cannot be a conflict between two functions of an office until the officer is confronted with facts which call for the performance of both functions. Ordinarily the officer should act upon the facts first presented to him and exercise his authority or perform his duty with respect to those facts. It may be that his exercise of such authority or performance of such duty may disqualify him from performing some other function of his office. However, we are aware of no principle of law which would deprive an officer of the authority or duty to perform one function of the office because such performance would disqualify him from performing some other authority or duty of the office at a later time. Should the facts invoking conflicting functions arise simultaneously the city attorney must elect which function to perform. While we have no basis on which to determine that one function has priority over another it is clear that rule 7 prohibits the city attorney from performing both functions. Once the city attorney undertakes to perform one function he or she must decline performing conflicting functions.

Whether information revealed to the city attorney by the member of the city counsel under the circumstances presented is confidential under the attorney-client privilege depends upon whether an attorney-client relationship exists between the member and the city attorney at that time. The determination of the existence of an attorney-client relationship is one of law for a court to make after the relevant facts are determined. (Kraus v. Davis (1970) 6 Cal.App.3d 484, 491.) In the case of public legal officers there is no contract to create an attorney-client relationship. If there is any such relationship it must arise out of a law which provides authority or a duty to act as an attorney in the matter. Here we have assumed that law to be a provision in the city charter providing authority or imposing a duty on the city attorney to advise city officers after receiving information in confidence under the attorney-client privilege. Does such a charter provision create an attorney-client relationship between the city officer and the city attorney when the advice is sought and given? The cases addressing this question are confusing and difficult to reconcile.

In Ward v. Superior Court (1977) 70 Cal.App.3d 23, Ward was chairman of the county's board of supervisors and Watson was the county assessor. Watson, "individually and as a taxpayer", sued Ward for defamation for remarks concerning Watson's performance as assessor. The trial court granted Watson's motion to disqualify the county counsel from defending Ward. The appellate court granted Ward's petition for mandate to set aside the order of disqualification.

Watson argued that since the county counsel had advised him on office matters, received confidential communications from him regarding operations of the assessor's office, and represented him in suits against the assessor there was an attorney-client relationship between Watson and the county counsel. Watson's position was that rule 7 prohibited the county counsel from defending Ward without Watson's written consent.

The court observed that application of the rule depended upon the existence of an attorney-client relationship between the assessor and county counsel.  If such relationship existed it arose out of the county counsel's duty under the charter to represent and advise county officers in matters pertaining to their duties.  The court then stated that a county counsel who provided such advice to a county officer pertaining to his duties did so as attorney for the county.  The court added that any communications between them concerning operation of the assessor's office could not be considered a secret confidential communication so as to bar the county, acting through its board of supervisors, from obtaining that information since the assessor, as agent for the county, had a duty of full disclosure to his principal.  The court held that there was no attorney-client relationship between the assessor and the county counsel which would prevent the county counsel from defending Ward under the rule.

People ex rel. Deukmejian v. Brown (1981) 29 Cal.3d 150 concerned the validity of the State Employer-Employee Relations Act (SEERA).  The Pacific Legal Foundation sued the Governor, the State Personnel Board (SPB) and others to prevent enforcement of SEERA because it violated the civil service provisions of the constitution.  Deputies of the Attorney General met with the SPB and outlined four positions it could take on the lawsuit.  Thereafter the Attorney General withdrew as counsel for the state agencies and authorized them to employ special counsel to defend the suit.  The Attorney General then filed an independent petition for mandate to prevent enforcement of SEERA.  The supreme court granted the Governor's motion to dismiss the Attorney General's petition.

The supreme court's opinion observed that the Attorney General was designated by law as the attorney for the Governor, the SPB and other state agencies with the duty to defend all causes to which the State or any state officer is a party in his official capacity.  The court also observed that a State Bar rule requires an attorney to obtain a client's written consent before representing interests adverse to the client.  The court then stated that "the Attorney General cannot be compelled to represent state officers or agencies if he believes them to be acting contrary to law, and he may withdraw from his statutorily imposed duty to act as their counsel, but he may not take a position adverse to those same clients."  Thus the supreme court's opinion assumes that when the deputies advised the SPB on the lawsuit the SPB was the Attorney General's client for purposes of the State Bar rule.

The supreme court distinguished the Ward case stating that because the county assessor sued as an individual and taxpayer the county counsel could represent the supervisors in defending the suit.  The high court said nothing about Ward's holding that there was no attorney-client relationship between the county counsel and the county assessor when they discussed the operation of the assessor's office.

In Civil Service Com. v. Superior Court (1984) 163 Cal.App.3d 70 the court enjoined the county counsel from suing the county civil service commission on behalf of the board of supervisors.  At page 78 the court said:

"We are able to accept the general proposition that a public attorney's advising of a constituent public agency does not give rise to an attorney-client relationship separate and distinct from the attorney's relationship to the overall governmental entity of which the agency is a part. Nonetheless we believe an exception must be recognized when the agency lawfully functions independently of the overall entity. Where an attorney advises or represents a public agency with respect to a matter as to which the agency possesses independent authority, such that a dispute over the matter may result in litigation between the agency and the overall entity, a distinct attorney-client relationship with the agency is created."

We do not read the Ward case as stating that there was no attorney-client relationship when the county counsel advised the assessor regarding operations of the assessor's office. Instead we understand the Ward case to say that the attorney-client relationship between the county counsel and the board of supervisors (and the county) was the same as the attorney-client relationship between the county counsel and all county officers as to those county functions which the board supervises. This is what the court in the Civil Service Commission case meant when it accepted as a general proposition that a public attorney's advising of a constituent public agency does not give rise to an attorney-client relationship separate and distinct from the attorney's relationship to the overall governmental entity of which the agency is a part.

How do these cases apply to the second question where a city attorney advises a member of the city council whether action the member has taken or will take violates the Reform Act? The Deukmejian case indicates that when a public attorney advises a public officer regarding his official duties pursuant to a law giving him a duty to provide such advice an attorney-client relationship is created which prevents the public attorney from acting adversely to his public officer client without his written consent under State Bar rules. That case would appear to apply with equal force to a city attorney advising members of his city council as to the Attorney General advising state agencies.

It could be argued under Ward that since the advice concerned city business revealing information about the member's financial interests did not create an attorney-client relationship between the member and the city attorney independent of the relationship between the city attorney and the city. Following Ward the advice would not preclude the city attorney from defending the city and its council in a lawsuit brought by the member in his private capacity. However, in this opinion, the question is not whether the city attorney can defend the city but whether he or she can prosecute the member he has advised regarding city business. Thus the Ward case does not compel an affirmative answer to the prosecution question.

We think the Arizona Supreme Court succinctly articulated the controlling legal and ethical principles which govern the actions of a public officer who is both legal adviser to other public officers and a public prosecutor. In a special action, Arizona's Governor sought to disqualify the Attorney General in the latter's investigation of the Governor's actions before a grand jury. In an order filed November 1, 1987 in the case of Evan Mecham, Petitioner v. Superior Court, etc.,

Respondent, Robert K. Corin, Attorney General, Real Party in Interest, No. CV-87-0410-SA, the Arizona Supreme Court stated:

"2. The Attorney General holds constitutional, elective office. He is not the attorney for the Governor; he is the attorney for the people and for the state as an entity. Three conclusions follow from this. First, the Attorney General's power and duty to represent the Governor exist only to the extent that he undertakes representation of the Governor in the latter's official capacity and the performance of official duties as Governor. The Attorney General does not represent the Governor when the Governor is not performing official duties. Second, the Attorney General has a duty to investigate any claim of wrongdoing by a public officer. United States v. Troutman, 814 F.2d 1428, 1438 (10th Cir. 1987). Third, the people are the ultimate beneficiaries of any governmental confidentiality, and disclosure is required in every instance in which the benefit of the state as a whole will be thereby served. Thus, while confidentiality does attach to some consultations between the Attorney General and a public officer, that principle does not protect either the Attorney General or the officer from divulging the contents of such consultations in a duly constituted inquiry into possible violations of law.

"In investigating claims of misconduct by an official, and in any possible prosecution which might follow, there is no per se conflict of interest between the Attorney General and the subject of the investigation. There is neither an appearance of impropriety nor an actual impropriety when the Attorney General investigates possible misconduct of a state officer even though he has previously represented that officer in the performance of the officer's general official business. Any other rule would render the Attorney General's office impotent to investigate alleged misconduct of state officers and seriously undermine the public interest in ensuring accountability of all who hold public office. Troutman, supra.

"3. A necessary exception to this rule is made when the Attorney General has actually represented the officer in question on the precise matter which is the subject of the investigation or prosecution. The People ex rel. Deukmejian v. Brown, 29 Cal.3d 150, 624 P.2d 1206, 172 Cal.Rptr. 478 (1981). In such cases, where the Attorney General has represented the officer in the performance of official duties, he may well have obtained confidential information specifically related to the matter at hand. Thus, it would violate constitutional due process for a prosecutor to obtain through such representation confidential information from a relationship created and required by law and then base a subsequent prosecution on that very information. See Troutman, supra.

"4. The trial judge ruled that he had no jurisdiction to consider the merits of the Governor's contention that the Attorney General should be disqualified. We disagree. If the Governor actually consulted the Attorney General on the precise matters being investigated, and the latter undertook representation, by court

appearance or otherwise, thereby receiving confidential communications from the Governor on those very matters, then, as noted above, it would violate ethical principles and even due process of law for the Attorney General to handle presentment to the grand jury.  In such cases, the Attorney General could not be authorized to conduct the grand jury investigation. . . ."

We conclude that a city attorney who has not exercised his authority to prosecute a member of the city council for violations of the Political Reform Act may lawfully undertake to receive information from the member regarding his or her financial interests on a confidential basis under the attorney-client privilege and advise the member whether official action the member has taken or may take would violate the Political Reform Act but then would be disqualified from prosecuting any such violations.

* * * * *