[Civ. No. 24663.   Second Dist., Div. Two.   Nov. 28, 1960.]

LAWRENCE ZELKIN, Respondent, v. CARUSO DIS-
COUNT CORPORATION (a Corporation) et al., Ap-
pellants.

Lillie & Bryant and Robert E. Ford for Appellants.

Wiener & Wiener and George M. Wiener for Respondent.

FOX, P. J.—Defendants appeal from a judgment in favor of plaintiff in the amount of $19,500 for services rendered pursuant to the terms of a written agreement. The agreement was executed by defendant Caruso Discount Corporation on November 9, 1957, and provided that plaintiff was employed "to represent *this Company and its affiliated Companies* in connection with their current Federal tax examination." Compensation for these services was stated to be $32,500, a retainer of $3,000 having already been paid "leaving a balance of $29,500.00 *payable when signed agreements with the Federal Government have been executed.*" (Emphasis added.) Plaintiff is a certified public accountant who maintains no office but works out of his home. He is a graduate of a law school and is a certified public accountant in both California and New York. His primary business is representing taxpayers in negotiating with the Internal Revenue Service concerning tax liabilities. In September or October, 1957, he was introduced to defendant H. J. Caruso, who told him that the Treasury Department was conducting an audit of the various Caruso enterprises and had proposed large deficiency assessments, principally upon monies held by Commercial Credit Corporation as reserves on conditional sales contracts sold to Commercial Credit Corporation by Caruso Discount Corporation. Other deficiency assessments were proposed which related to the amounts paid certain officers as salaries and to certain amounts deducted as travel and entertainment expenses. At a later meeting with defendant H. J. Caruso, plaintiff indicated that he would undertake further consideration of the matter for a retainer of $3,000, which Caruso paid him. Following discussions with the revenue agent, representatives of Commercial Credit Corporation and the auditor for Caruso Discount Corporation, plaintiff, on November 9, 1957, met with defendant H. J. Caruso and submitted a pro-

posed contract calling for the payment of $45,000 for his services in representing the various Caruso enterprises in an attempt to reach an equitable settlement of the proposed deficiency assessments. In so far as here material, the parties finally agreed upon a fee of $32,500. Prior to the execution of this latter agreement, all of the defendants had executed powers of attorney by which plaintiff was appointed their lawful representative before the Treasury Department. Following the signing of the November 9 agreement, plaintiff had several meetings with representatives of Commercial Credit Corporation, and also met with the Treasury agent 8 or 10 times. As a result of plaintiff's efforts a tentative agreement was reached with the Treasury Department that the amount of the deficiency assessment against Caruso Discount Corporation, which involved the reserves held by Commercial Credit Corporation, would be set at about $240,000. In January 1958, the Treasury Department sent certain documents entitled "Waiver of Restrictions on Assessments and Collection of Deficiencies in Tax and Acceptance of Overassessment" (Treasury Form 870) to plaintiff, who transferred them to defendants, and these forms were subsequently executed by defendants. Following the signing of the "Waivers" plaintiff sought payment of his fee and was subsequently paid a total of $10,000, reducing the outstanding balance to $19,500. The judgment herein awards plaintiff the amount of $19,500, the outstanding balance, and defendants have appealed.

During the course of the trial defendants attempted to prove that the services rendered by plaintiff constituted the practice of law and entailed no accounting work. The court found that the work performed by plaintiff comprised accounting services exclusively and did not constitute the practice of law. Defendants contend on appeal that the uncontroverted evidence demonstrates conclusively that plaintiff's services were entirely legal in nature and that, therefore, the contract was illegal, and plaintiff was entitled to recover nothing. While acknowledging the settled rule on appeal that all evidence and inferences from the evidence must be construed in the light most favorable to the prevailing party, defendants have set forth at length the testimony of plaintiff which they claim demonstrates that his services were, in fact, legal services and not accounting services. They correctly point out that plaintiff testified that he did "research" at two separate law libraries and that he "reviewed" the original reserve

agreement between Commercial Credit Corporation and Caruso Discount Corporation. However, plaintiff also testified that his "research" was directed exclusively toward a determination of the accounting methods employed by other companies which had been involved in similar tax problems. He consistently and repeatedly denied that he read any cases to determine the applicable law; that he was completely disinterested in the results of the cases which he reviewed and was searching only for the proper methods of accounting which had been employed.

■■■ However, defendants strongly argue that by the very nature of the question involved in the dispute between defendants and the Treasury Department, only a question of law was involved. Simply stated, the determination of the amount of the deficiencies which should be assessed against Caruso Discount Corporation involved the amount of the reserve which Commercial Credit Corporation could legitimately withhold as security for the conditional sales contracts which it had purchased from Caruso Discount Corporation. The question resolved itself to a consideration of what percentage of the total paper held by Commercial Credit Corporation it could legitimately retain as a reserve based upon the quality of the paper held, market conditions, and general business activity. Any amounts retained by it over and above the permissible percentage would be available to Caruso Discount Corporation upon demand and would, therefore, be taxable income. (Caruso Discount Corporation was in the years here pertinent on a cash basis for tax purposes.) Thus, defendants argue, a legal question is presented as to the availability of the reserves to Caruso Discount Corporation upon their demand. Plaintiff, on the other hand, contends that all that was involved was a question of fact, i.e., what percentage of the total paper held could be properly held in reserve against Caruso Discount Corporation's demand? It clearly appears from the evidence that the original reserve agreement between Commercial Credit Corporation and Caruso Discount Corporation, which called for a 5 per cent reserve, had ceased to control prior to the Government's interest in the reserves, at least as far as the percentage thereof was concerned. There is evidence that this percentage clause was modified orally and that the parties acted upon the oral modification for, during the taxable periods here in question, in excess of 11 per cent was being retained. Clearly, the only question involved in plaintiff's negotiations with the Treasury Depart-

ment concerning this reserve was the percentage retention allowable to Commercial Credit Corporation to properly secure it against the contingent liabilities inherent in the conditional sales contracts which it had purchased from Caruso Discount Corporation. While it might be true that decisional precedent could play a major role in such a consideration, at least in relation to the factual question posed, yet there is no evidence to indicate that this was the case. We cannot say, as a matter of law, that plaintiff did, in fact, negotiate with the Treasury Department on the basis of decided cases similar on their facts; but rather, we must conclude that the trial court's determination that he did not practice law, which is based upon his uncontradicted testimony, is fully supported by the evidence. Defendants cite *Agran* v. *Shapiro,* 127 Cal.App.2d Supp. 807 [273 P.2d 619] as being controlling in this case and argue that it requires a finding that plaintiff's services constituted the illegal practice of law. The Agran case is, however, clearly distinguishable from the instant matter, for the accountant there testified that he cited numerous cases to the Internal Revenue agent and that he ''spent approximately 4 days in reading and reviewing over 100 cases *on the proposition of law involved.''* (Emphasis added.) In this case plaintiff testified that he read no law nor did he cite any to the Internal Revenue agent; thus he could be said to have been practicing law only if on the face of the problem which he was negotiating no discussion of that problem would be possible without reference to legal issues and no persuasive argument could be made which did not include a discussion of legal principles. However, no such inescapable conclusion is apparent on the face of ''the availability of reserves'' question which plaintiff negotiated with the Treasury Department. Therefore, defendants' contention that the undisputed facts show conclusively that plaintiff was illegally practicing law is without merit.

Defendants next contend that the judgment is erroneous in that, of the eight defendants, only Caruso Discount Corporation executed the written contract upon which this suit was brought. However, it clearly appears from the evidence that from the outset plaintiff was employed to represent all of the defendants and it further appears that it was the intention of the parties that the retainer agreement should encompass his services in relation to all eight defendants. The identities of the real parties in interest under the contract were clearly revealed by parol evidence (see

*Greenwood* v. *Mooradian,* 137 Cal.App.2d 532, 543 [290 P.2d 955] ; *Branch* v. *Bekins Van & Storage Co.,* 106 Cal.App. 623, 635 [290 P. 146] ; *Caspary* v. *Moore,* 21 Cal.App.2d 694, 698 [70 P.2d 224] ) and, furthermore, each of the defendants had executed a power of attorney appointing the plaintiff as their agent to negotiate with the Treasury Department. That it was intended that these several contracts should cover plaintiff's employment was clearly developed at the trial. (See *Merkeley* v. *Fisk,* 179 Cal. 748, 754 [178 P. 945].) Thus, all of the defendants were, in effect, parties to the written agreement and the judgment against them was proper in this respect.

Defendants further argue that the judgment was erroneous in that the evidence fails to show that plaintiff fulfilled the conditions precedent under the contract in that there was no proof that "signed agreements with the Federal Government" had been executed. On this point defendants apparently argue that it was contemplated or implicit in the contract that such agreements be final agreements. They next contend that Treasury Form 870 does not constitute a final or "closing agreement" but constitutes a mere waiver by the taxpayer of the restrictions on the assessment and his agreement to pay the entire amount. While considerable space is devoted in the briefs to a discussion of the question relating to the finality of the execution of Form 870 with respect to the taxpayer's rights and obligations, we do not deem it necessary to delve into the matter for it is clear that the contract between the parties did not contemplate in terms or by implication that a technical "final" agreement be executed, but provided only that "signed agreements" with the Federal Government be executed by defendants. This was done. Moreover, defendants paid the assessments so agreed upon. Thus, in any event, the effect of executing the Form 870 was as to the defendants a final agreement. This condition to recovery was therefore wholly fulfilled and the judgment is not erroneous in this respect.

The judgment is affirmed.

Ashburn, J., and Kincaid, J. pro tem.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 25, 1961.

*Assigned by Chairman of Judicial Council.