[L.A. No. 29717. In Bank. May 5, 1970.]

HAL F. BARON, Plaintiff and Appellant, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

**COUNSEL**

Martin & Flandrick and Robert Flandrick for Plaintiff and Appellant.

Tuttle & Taylor and Julian Burke as Amici Curiae on behalf of Plaintiff and Appellant.

Burke, Williams & Sorensen and Royal M. Sorensen for Defendants and Respondents.

**OPINION**

**MOSK, Acting C. J.** —In 1967 the City of Los Angeles adopted Ordinance No. 134571, entitled "Registration of Lobbyists" and incorporated in Los Angeles Municipal Code at chapter 4, article 8, sections 48.01 to 48.09.

The ordinance provides that "any person who shall engage himself for pay or for any consideration . . . for the purpose of attempting to influence the action on municipal legislation by the City Council, any of its committees, any board or commission, or any committee thereof, or any officer or employee of the City charged by law with the duty of conducting

a hearing and making a decision thereon, including the approval or veto or other action by the Mayor upon municipal legislation, shall, before doing anything in furtherance of such object, register with the City Clerk as a municipal legislative advocate." (§ 48.02, subd. (a).)[1] "Municipal legislation" is defined by the ordinance to include "resolutions, motions, appeals, applications, petitions, nominations, ordinances, amendments, and other matters pending or proposed before the City Council or any of its committees, or before any board or commission, whether created by Charter or by ordinance, or any committee of a board or commission, or any officer or employee of the City charged by law with the duty of conducting a hearing and making a decision as to the matter pending or proposed." (§ 48.01, subd. (c).)

An individual required to register under the ordinance must file with the city clerk at the time of registration a form stating his name and address, the name and address of the person or organization represented by him, the duration of his employment, the amount he receives for expenses and what expenses are included. He must also submit written authorization from each person he represents. Each calendar quarter registrants must file additional reports of (1) all money received as compensation for regular employment as a municipal legislative advocate, (2) each expenditure of $25 or more made in the course of such employment, (3) the proposed legislation he was employed to support or oppose, and (4) the names of any publications to which he contributed written material to influence municipal legislation. (§ 48.02, subds. (a) and (b).)[2]

The plaintiff in this action is an attorney in the Los Angeles area. A substantial portion of his practice involves appearances before the City Council, officers, boards, committees, and commissions of the City of Los Angeles on behalf of persons interested in matters falling within the definition of "municipal legislation" in the ordinance. To continue his activities,

---

[1]Subdivision (c) of section 48.02 exempts (1) public officials acting in their official capacities. (2) newspapers, radio or television stations as to news items, editorials and paid advertisements, (3) persons invited by the City Council, or any board, commission, committee, or hearing officer, for the purpose of giving testimony in aid of the body or person extending the invitation, (4) persons appearing before city agencies regarding municipal legislation pursuant to procedures established by state or federal law, (5) persons appearing without pay and not as part of their regular employment, representing organizations which have one or more of their officers or employees already registered, and (6) persons applying for grading permits or permits relating to construction or alteration of buildings, and persons filing parcel or subdivision maps, provided that persons taking appeals to city agencies on such matters are not exempted.

[2]Additional provisions of the ordinance include the obligations of municipal legislative advocates (§ 48.03) and special provisions apply to persons who collect, receive or expend money to be used in influencing action on any municipal legislation (§ 48.06).

he will be required to register. Acting for himself and others similarly situated, plaintiff filed this action seeking a declaration that the ordinance is void as applied to attorneys because, so applied, it regulates the practice of law, a field preempted by state legislation. The plaintiff contends that the State Bar Act (Bus. & Prof. Code, § § 6000-6172) precludes local regulation of licensed attorneys engaged in the practice of law.

The trial court held that the ordinance is a valid exercise of the police power of the City of Los Angeles and that it may be applied to plaintiff and others similarly situated, except when they are "acting on behalf of others in the performance of a duty or service, which duty or service lawfully can be performed for such other only by an attorney licensed to practice law in the State of California." We affirm the judgment.

■ Los Angeles is a chartered city with the power "to make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in [its charter]." (Cal. Const., art XI, § 6.)[3] Therefore, ordinances relating to matters which are purely "municipal affairs" are not invalid because they are in conflict with general state laws or because state laws have been enacted to cover the same subject. (*Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 61 [81 Cal.Rptr. 465, 460 P.2d 137].) "As to matters which are of statewide concern, however, home rule charter cities remain subject to and controlled by applicable general state laws regardless of the provisions of their charters, if it is the intent and purpose of such general laws to occupy the field to the exclusion of municipal regulation (the preemption doctrine)." (*Id.* at pp. 61-62.)[4]

■ Accordingly, our first inquiry must be to determine whether Ordinance No. 134571 regulates purely municipal affairs. If it does, plaintiff's attack on its validity, based on the State Bar Act, must fail. However, we

---

[3]Similarly, article XI, section 8, subdivision (j), provides in part: "It shall be competent in any charter framed under the authority of this section to provide that the municipality governed thereunder may make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws."

Article XI, section 11, embodies the general police power provision applicable to all cities: "Any county, city, town, or township may make and enforce within its limits all such local, police, sanitary and other regulations as are not in conflict with general laws."

[4]"The doctrine of state preemption becomes a determining factor only when a political subdivision . . . attempts to legislate under its admitted police power (art. XI, § 11) on a subject that the state also has legislated upon. . . . The doctrine is not applicable to the claim that the state Legislature is prohibited (by the home rule provisions of the other sections of art. XI) from enacting legislation which will affect a chartered city. In the latter case, the sole question is whether or not the subject matter of the attempted legislation is exclusively a municipal affair." (*Professional Fire Fighters, Inc.* v. *City of Los Angeles* (1963) 60 Cal.2d 276, 292, fn. 11 [32 Cal.Rptr. 830, 384 P.2d 158].)

find that the ordinance does not regulate purely municipal affairs and therefore the ordinance is invalid to the extent that the field it regulates is preempted by state laws.

Superficially, the ordinance would appear to be a regulation of a mere municipal subject: the registration and control of local lobbyists.[5] One is hard pressed to divine any statewide concern in a local procedure by means of which a local legislative body and the people within its jurisdiction may learn the identity, affluence and power of the interests seeking to influence action on municipal legislation.[6] Indeed, the state's interest in lobbying would seem to be limited to efforts of lobbyists to affect measures pending before the state Legislature. (See Gov. Code, § 9900 et seq.)

However, closer scrutiny reveals a substantial area of statewide interest involved in Ordinance No. 134571. The definition of "municipal legislation" adopted by the city is so broad as to apply to virtually all of the activities of attorneys representing clients before any local administrative agencies, including those activities which are unrelated to lobbying as it is traditionally defined. In effect, the ordinance invokes a substantial regulation of attorneys in the practice of their profession in that it requires many of those practicing before city agencies to register as "municipal legislative advocates."

Regulation of attorneys and control over the practice of law have always been considered matters of statewide concern. "[T]he profession and practice of the law, while in a limited sense a matter of private choice and concern in so far as it relates to its emoluments, is essentially and more largely a matter of public interest and concern, not only from the viewpoint of its relation to the administration of civil and criminal law, but also from that of the contacts of its membership with the constituent membership of society at large, whose interest it is to be safeguarded against the ignorances or evil dispositions of those who may be masquerading beneath the cloak of the legal and supposedly learned and upright profession. . . . It is for . . . these reasons that the membership, character and conduct of those

---

[5]Lobbyists were originally known as lobby-agents, particularly in Albany in the early nineteenth century. By 1832, however, they were commonly referred to in Washington as lobbyists. (H. L. Mencken, The American Language (1938) p. 148.)

[6]At an early date the United States Supreme Court indicated approval of identification of lobbying activities. See *Marshall* v. *Baltimore and Ohio Railroad Company* (1853) 57 U.S. (16 How.) 314, 334 [14 L.Ed. 953], in which the court warned that "Influences secretly urged . . . must necessarily operate deleteriously on legislative action . . . ." The court also noted that "where persons act as counsel or agents, or in any representative capacity, it is due to those before whom they plead or solicit, that they should honestly appear in their true characters, so that their arguments and representations, openly and candidly made, may receive their just weight and consideration."

entering and engaging in the legal profession have long been regarded as the proper subject of legislative regulation and control; . . . From almost the inception of our state government statutory provision has been made for the admission, disbarment, suspension or disciplining of members of the legal profession." (*State Bar of California* v. *Superior Court* (1929) 207 Cal. 323, 331 [278 P. 432]; *In re McKenna* (1940) 16 Cal.2d 610, 611 [107 P.2d 258].)

Furthermore, the scope of the State Bar Act (Bus. & Prof. Code, §§ 6000-6172) as it is written today manifests legislative belief that there is substantial state interest in the regulation of the legal profession. Among other elements, the act delineates rules governing admission to the practice of law, rules of professional conduct for members of the State Bar, procedures for the disciplining of members of the bar, and rules of procedure to be followed in matters pending before bar committees.

Therefore, although the Los Angeles ordinance, by its title and purpose, would appear to be limited to municipal affairs, the ordinance as it is written has substantial direct effect upon the practice of law within the state, a matter of statewide concern. We conclude that Ordinance No. 134571 deals with subjects that are not purely municipal affairs and that the ordinance is invalid to the extent that it conflicts with state law.

 " 'As defined by the cases the constitutional phrase "conflict with general laws" (art. XI, § 11) may arise in several different ways. It may grow out of the exact language of the state and municipal laws [citations] or from a local attempt "to impose additional requirements in a field that is preempted by the general law" [citations] or from the state's adoption of "a general scheme for the regulation of a particular subject" [citations].
 But if the state's preemption of the field or subject is not complete, local supplemental legislation is not deemed conflicting to the extent that it covers phases of the subject which have not been covered by state law. [Citations.]' " (*Robins* v. *County of Los Angeles* (1966) 248 Cal.App.2d 1, 8-9 [56 Cal.Rptr. 853], quoting from *In re Martin* (1963) 221 Cal.App.2d 14, 16-17 [34 Cal.Rptr. 299].)

Plaintiff does not contend that there is any direct conflict between the provisions of the State Bar Act and those of the Los Angeles ordinance, and we have found none. The conflict arises, it is asserted, because the State Bar Act preempts the field of regulation of the practice of law, and that field is invaded by the Los Angeles ordinance to the extent the ordinance is applied to attorneys acting in a representative capacity. The State Bar Act is a comprehensive scheme for the regulation of all aspects of law practice, which includes all professional services performed by attorneys for their clients. Thus, plaintiff contends even if the ordinance purported

to regulate only the traditional lobbying activities of lawyers—i.e., contacting and importuning legislators and making paid appearances to influence the outcome of legislative matters—it would be invalid.

Plaintiff's position is not without substance. It is difficult to draw logical distinctions among the varied services performed by lawyers for their clients and to determine that only some of the services constitute the "practice of law" In a pragmatic sense, the practice of law encompasses all of the activities engaged in by attorneys in a representative capacity, including legislative advocacy. (41 Ops.Cal.Atty.Gen. 86, 93 (1963).) ■ And it is well settled that a licensed attorney "must conform to the professional standards in whatever capacity he may be acting in a particular matter." (*Librarian* v. *State Bar* (1943) 21 Cal.2d 862, 865 [136 P.2d 321].) "People call on lawyers for services that might otherwise be obtained from laymen because they expect and are entitled to legal counsel. Attorneys must conform to professional standards in whatever capacity they are acting . . . ." (*Crawford* v. *State Bar* (1960) 54 Cal.2d 659, 668 [7 Cal.Rptr. 746, 355 P.2d 490]; *Associated Indem. Corp.* v. *Ind. Acc. Com.* (1943) 56 Cal. App.2d 804, 808-809 [133 P.2d 698].)

However, in other respects courts have incorporated a less expansive definition of the "practice of law" into the State Bar Act. As early as 1922, before the passage of the modern State Bar Act, the Supreme Court adopted the definition of "practice of law" used in an Indiana case: " '[A]s the term is generally understood, the practice of the law is the doing and performing services in a court of justice in any matter depending therein throughout its various stages and in conformity with the adopted rules of procedure. But in a larger sense it includes legal advice and counsel and the preparation of legal instruments and contracts by which legal rights are secured although such matter may or may not be depending in a court.' " (*People* v. *Merchants Protective Corp.* (1922) 189 Cal. 531, 535 [209 P. 358], quoting *Eley* v. *Miller* (1893) 7 Ind. App. 529 [34 N.E. 836, 837]; see also *State Bar of California* v. *Superior Court* (1929) *supra,* 207 Cal. 323, 334-335; *Agran* v. *Shapiro* (1954) 127 Cal.App.2d Supp. 807, 812 [273 P.2d 619]; *People* v. *Ring* (1937) 26 Cal.App.2d. Supp. 768, 771-772 [70 P.2d 281].) "[T]he legislature adopted the State Bar Act in 1927 and used the term 'practice law' without defining it.[7] The conclusion is obvious and inescapable that in so doing it accepted both the definition already judicially supplied for the term and the declaration of the Supreme Court [in *Merchants*] that it had a sufficiently definite

---

[7]Current section 6002 of the Business and Professions Code provides that "[t]he members of the State Bar are all persons admitted and licensed to *practice law* in this State except justices and judges of courts of record during their continuance in office." (Italics added.)

meaning to need no further definition. The definition above quoted from *People* v. *Merchants Protective Corp.* has been approved and accepted in the subsequent California decisions [citations], and must be regarded as definitely establishing, for the jurisprudence of this state, the meaning of the term 'practice law.' " (*People* v. *Ring* (1937) *supra,* 26 Cal.App.2d Supp. 768, 772.)

It is evident that the foregoing definition does not encompass all lawyers' professional activities which could reasonably be included. However, the definition does delineate those services which only licensed attorneys can perform. Laymen who "practice law" within the meaning of the State Bar Act are guilty of a misdemeanor.[8]

Therefore, it appears for our purposes here that it is not the whole spectrum of professional services of lawyers with which the State Bar Act is most concerned, but rather it is the smaller area of activities defined as the "practice of law." It must be conceded that ascertaining whether a particular activity falls within this general definition may be a formidable endeavor. (*Agran* v. *Shapiro* (1954) *supra,* 127 Cal.App.2d Supp. 807, 812.) In close cases, the courts have determined that the resolution of legal questions for another by advice and action is practicing law "if difficult or doubtful legal questions are involved which, to safeguard the public, reasonably demand the application of a trained legal mind." (*Id.* at p. 818; see also *Zelkin* v. *Caruso Discount Corp.* (1960) 186 Cal.App. 2d 802, 806 [9 Cal.Rptr. 220]; *People* v. *Sipper* (1943) 61 Cal.App.2d Supp. 844, 846-847 [142 P.2d 960].) Less perplexing is the determination of whether participation on behalf of another in hearings and proceedings before a board or commission constitutes the practice of law. The cases uniformly hold that the character of the act, and not the place where it is performed, is the decisive element, and if the application of legal knowledge and technique is required, the activity constitutes the practice of law, even if conducted before an administrative board or commission. (Annotation, What Amounts to Practice of Law (1937) 111 A.L.R. 19, 32.)

■ It follows from the totality of this rationale that the State Bar Act preempts the field of regulation of attorneys only insofar as they are "practicing law" under the act—i.e., performing services in a representative capacity in a manner which would constitute the unauthorized practice of law if performed by a layman. Such an interpretation of the act is consistent with its language and its general scope. The act is con-

---

[8]"No person shall practice law in this State unless he is an active member of the State Bar." (Bus. & Prof. Code, § 6125.) "Any person advertising himself as practicing or entitled to practice law or otherwise practicing law . . . who is not an active member of the State Bar, is guilty of a misdemeanor." (Bus. & Prof. Code, § 6126.)

cerned primarily with the licensing of attorneys, i.e., setting standards for admission to the profession, regulating the conduct of those admitted, and disciplining transgressors. As a licensing statute, it distinguishes between the rights and obligations of those granted licenses and the general population. Thus, although the ethical standards in the act may apply to attorneys in all of their professional activities, the act in its entirety constitutes an exclusive state regulatory scheme only insofar as it governs the activities which only licensed attorneys can lawfully perform.

█ On the basis of detailed findings, the trial judge properly held that Ordinance No. 134571 was valid as applied to attorneys, except when they are "acting on behalf of others in the performance of a duty or service, which duty or service lawfully can be performed for such other only by an attorney licensed to practice law in the State of California." To the extent that the ordinance purports to govern lawyers' activities which constitute the "practice of law" within the State Bar Act, it invades a field of regulation preempted by state law, and lawyers whose services for clients in proceedings before city agencies fall within that definition need not register as "municipal legislative advocates." For illustrative purposes, we indicate that an attorney representing a client before a city board or commission which is holding a hearing to reach a quasi-judicial decision on a matter involving factual and legal questions need not register under the ordinance; on the other hand, an attorney authorized by a client to appear at hearings considering local legislation in order to argue for or against the adoption of that legislation would be within the legitimate thrust of the ordinance.

We recognize that debatable situations may develop under the ordinance as we have circumscribed its application. However, we are requiring no more of lawyers who must decide whether to register under the ordinance than we require of laymen who must decide whether their conduct may subject them to prosecution for the unauthorized practice of law.

The judgment is affirmed.

McComb, J., Peters, J., Tobriner, J., Sullivan, J., Ford, J.,* and Files, J.,* concurred.

---

*Assigned by the Acting Chairman of the Judicial Council.