[Civ. No. 48697. Second Dist., Div. One. Nov. 2, 1976.]

CITY OF LOS ANGELES, Plaintiff and Appellant, v.
DEPARTMENT OF HEALTH et al.,
Defendants and Respondents.

474

## COUNSEL

Burt Pines, City Attorney, Claude E. Hilker, Assistant City Attorney, and Sally Disco, Deputy City Attorney, for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, N. Eugene Hill, Assistant Attorney General, Ronald V. Thunen, Jr., Patric Hooper, Anne S. Pressman and John H. Sanders, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

THOMPSON, J.—Welfare and Institutions Code section 5116, enacted in 1970, provides in part: ". . . a state authorized, certified, or licensed family care home, foster home, or group home serving six or fewer

mentally disordered or otherwise handicapped persons or dependent and neglected children shall be considered a residential use of property for the purposes of zoning if such homes provide care on a 24-hour-a-day basis. [¶] Such homes shall be a permitted use in all residential zones, including, but not limited to, residential zones for single-family dwellings." The section authorizes any city or county to require a conditional use permit for the maintenance of a "home" but limits the conditions imposed to those no more restrictive than applicable to similar dwellings in the "same zones unless such additional conditions are necessary to protect the health and safety of the residents." The case at bench tests the applicability of section 5116 to a "home rule" chartered city in light of California Constitution, article XI, section 5.

■ We conclude that: (1) section 5116 of the Welfare and Institutions Code is, by its terms, applicable to both chartered and general law cities; and (2) the statute is part of a statutory scheme of treatment of mentally ill and handicapped persons which is of statewide concern. Accordingly, we affirm a judgment of the trial court declaring that city planning and zoning ordinances contrary to the state statute are invalid.

The City of Los Angeles (City) is a chartered municipality within the meaning of California Constitution, article XI, section 5. It has enacted a general planning and zoning ordinance containing a definition of single family dwelling which, if valid, precludes the location of a facility described in Welfare and Institutions Code section 5116 in an area zoned for single family residences.[1]

City filed its action seeking a declaration that its zoning ordinance was valid despite the state statute. Both City and the defendants moved for

---

[1]The application of City's zoning requirements to facilities described in section 5116 is illustrated by the following chart:
  (1)  Family home—
       the licensee resides in the home which provides board and care for six.
       a.  mentally disordered children .................................................................C2
       b.  physically handicapped children including developmentally disabled ..............R5
       c.  dependent or neglected children ............Any R zone with variance; otherwise, R4
       d.  mentally disordered adults ...................................................................C2
       e.  physically handicapped adults, including developmentally disabled ...............R5
  (2)  Group homes—
       the licensee does not reside in the home which provides board and care for six:
       f.  mentally disordered children.................................................................C2
       g.  physically handicapped children including developmentally disabled ..............R5
       h.  dependent or neglected children ...........................................................R4
       i.  mentally disordered adults...................................................................C2
       j.  physically handicapped adults...............................................................R5

summary judgment. Based upon an agreed statement of facts, the trial court determined that Welfare and Institutions Code section 5116 is controlling over City's ordinances to the contrary.

On this appeal from that judgment, City contends: (1) Welfare and Institutions Code section 5116 should be interpreted as applicable only to general law and not to charter cities; (2) California Constitution, article XI, section 5 precludes the applicability of section 5116 to charter cities because zoning is a "municipal affair"; and (3) if the state statute is viewed as in implementation of a matter of statewide concern so as generally to be applicable despite the home rule provisions of the California Constitution, the statute is nevertheless overbroad.

### *Statutory Construction*

The Lanterman-Petris-Short Act (Welf. & Inst. Code, § 5000 et seq.) was enacted in 1967 as a comprehensive statewide scheme for the treatment of "mentally disordered" persons. The act makes special provision for the confinement of persons who are "gravely disabled" by reason of mental disorder. (Welf. & Inst. Code, §§ 5150-5152, 5250-5268, 5300-5331, 5350-5368.) Section 5358 of the Welfare and Institutions Code empowers a "conservator" appointed by the court for the benefit of a mentally disordered person "to place his conservatee in a medical, psychiatric, nursing, or other state-licensed facility, or a state hospital . . . . If the conservatee is not to be placed in his own home or the home of a relative, first priority shall be to placement in a suitable facility as close as possible to his home or the home of a relative."

In 1970, the Lanterman-Petris-Short Act was amended to express policy guidelines for the placement of persons subject to it. Section 5115, enacted in that year, states: "The Legislature hereby finds and declares: [¶] (a) It is the policy of this state, as declared and established in this act and in the Lanterman Mental Retardation Act of 1969, that mentally and physically handicapped persons are entitled to live in normal residential surroundings and should not be excluded therefrom because of their disability. [¶] (b) In order to achieve uniform statewide implementation of the policies of this act and those of the Lanterman Mental Retardation Act of 1969, it is necessary to establish the statewide policy that the use of property for the care of six or fewer mentally disordered or otherwise handicapped persons is a residential use of such property for the purposes of zoning."

Welfare and Institutions Code section 5116, the statute which directly concerns us in the case at bench, was enacted in conjunction with section 5115. The preamble to section 5116 states that it is enacted, "Pursuant to the policy stated in Section 5115 . . . ."

On their face, sections 5115 and 5116 are equally applicable to chartered and general law cities. The statutory reference is to cities and counties without distinction. Only by equal application to zoning regulations in all muncipalities can the statewide policy, as opposed to insularly differentiated methods of housing handicapped persons, be achieved.

City seeks to avoid the construction dictated by the wording of the sections by reference to the convolutions experienced by AB 2406, the amending statute, in its way through the legislative process. As originally introduced in the 1970 legislative session, AB 2406 proposed to add a section to the Government Code providing that city or county zoning ordinances "shall be applicable" to the use of property for facilities for handicapped persons. The bill was first amended to read: "A state-authorized, certified, or licensed family care, foster home, or group home serving six or fewer mentally disordered or otherwise handicapped persons, shall be considered a family for the purposes of zoning." A staff report questioned that "family" was a precise enough term to accomplish the purpose of the amended legislation. The report recommends, also, that if state preemption is intended, there should be an expression to that effect. AB 2406 was amended in the Assembly to amplify the Welfare and Institutions Code rather than the Government Code to provide: "A state-authorized [etc.] . . . home serving six or fewer . . . handicapped persons, shall be considered a residential use of property for the purposes of zoning." The bill, as so amended, passed the Assembly and proceeded to the Senate.

The staff of the Senate Local Government Committee suggested that its members might "wish to consider the issue of implied state preemption . . . ." The bill was amended in the Senate. The first Senate amendment introduces the language of what is now Welfare and Institutions Code section 5115. It also uses the language of present section 5116, with the additional phrase "the provisions of this section shall be applicable to chartered cities as well as general law cities." The bill was again amended to eliminate the specific reference to charter as well as general law cities, and was passed as amended by both houses of the Legislature.

Unquestionably, the deletion of the specific reference to charter as well as general law cities must be considered in determining the legislative intent which underlies Welfare and Institutions Code sections 5115 and 5116. The significance of the deletion is, however, unclear. The Legislature may have omitted the language because it did not desire the statutes to be applicable to charter cities, or it may have done so because it viewed the words as surplusage in light of the other language of the legislation referring to cities and counties without distinction as to type.

The latter seems the more reasonable inference. When AB 2406 was originally introduced, its thrust was 180 degrees away from the ultimate outcome of the legislation. The bill then provided that local zoning ordinances controlled. It is fair to assume that the Legislature, knowing the original wording of the bill, would have expressly reinstated it as to charter cities if it intended to exempt them and would not have attempted to accomplish the exemption by implication.

Thus, we construe Welfare and Institutions Code section 5116 as applicable to charter as well as general law cities. The statute controls over local ordinances to the contrary unless the operation of state law is precluded by California Constitution, article XI, section 5.

### State Preemption

By reason of the power granted charter cities by California Constitution, article XI, section 5, ordinances of those cities "relating to matters which are purely 'municipal affairs' are not invalid because they are in conflict with general state laws or because state laws have been enacted to cover the same subject. [Citation.] 'As to matters which are of statewide concern, however, home rule charter cities remain subject to and controlled by applicable general state laws . . . if it is the intent and purpose of such general laws to occupy the field to the exclusion of municipal regulation . . . .' " (*Baron* v. *City of Los Angeles* (1970) 2 Cal.3d 535, 539 [86 Cal.Rptr. 673, 469 P.2d 353, 42 A.L.R.3d 1036].)

If the scheme of regulation involved in the case at bench is treated as classical zoning, it then may well be a municipal affair subject to charter city ordinance which is inconsistent with state law. (*Fletcher* v. *Porter* (1962) 203 Cal.App.2d 313, 323-325 [21 Cal.Rptr. 452]; see also *City of Walnut Creek* v. *Silveira* (1957) 47 Cal.2d 804 [306 P.2d 453].) If, however, the scheme is considered one relating to governing the location

of homes for the placement of handicapped persons, then it relates to a matter of statewide rather than local concern. The consequences of placement, treatment, and, hopefully, return of the handicapped to a productive and respected place in society is a subject that transcends municipal boundaries. (See Comment (1974) 7 U.C. Davis L.Rev. 150; see also *CEEED* v. *California Coastal Zone Conservation Com.* (1974) 43 Cal.App.3d 306, 323 [118 Cal.Rptr. 315], holding that because of the statewide consequences of the ecological and environmental impact of land use, California's coastal plan prevails over local zoning ordinances; and *People* ex rel. *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480 [96 Cal.Rptr. 553, 487 P.2d 1193]; *Pac. Tel. & Tel. Co.* v. *City & County of S. F.* (1959) 51 Cal.2d 766 [336 P.2d 514].)

Doubt whether regulation relates only to a municipal affair or to a broader concern must be resolved in favor of the legislative authority of the state. (*Abbott* v. *City of Los Angeles* (1960) 53 Cal.2d 674, 681 [3 Cal.Rptr. 158, 349 P.2d 974, 82 A.L.R.2d 385]; *Younger* v. *Berkeley City Council* (1975) 45 Cal.App.3d 825, 830 [119 Cal.Rptr. 830].) So resolving doubt, the statutory scheme with which we are here confronted must be viewed as one of statewide concern. The first element necessary for state preemption is thus present. So is the second. It is apparent from the face of sections 5115 and 5116 that their purpose is to occupy the field to the exclusion of municipal regulation.

*Overbreadth*

Citing *Pac. Tel. & Tel. Co.* v. *City & County of S. F., supra,* 51 Cal.2d 766, as "implicitly" imposing the requirement that statewide legislation be framed as narrowly as possible to avoid intrusion on municipal affairs, City argues that the goals of the statutory scheme can be accomplished by means short of defining homes for the handicapped as single family dwellings. The argument implies a restriction on the power of the Legislature over matters of statewide concern that does not exist. True, *Pac. Tel. & Tel.,* in the course of invalidating a city ordinance excluding telephone lines from city streets, recites a telephone company concession that the city can impose reasonable permit requirements for the precise location and manner of construction of telephone cable. (51 Cal.2d at pp. 773-774.) If the recitation is treated as a statement of law, it falls far short of the proposition for which it is cited by City.

The state legislative power over matters of statewide concern necessarily includes the Legislature's right to frame the terms of legislation exercising the power. The issue is not whether the Legislature acted wisely but whether it acted constitutionally in light of article XI, section 5 of the California Constitution. The question is not whether the purpose of the statewide legislation may conceivably have been accomplished by means less intrusive upon the power of cities, but whether the legislation implements a purpose which should bind equally both charter and general law municipalities. To the extent that there may be some specific municipal concern in zoning to protect health and safety of the municipality's residents, the municipal power over that area of zoning is preserved by section 5116.

## Disposition

The judgment is affirmed.

Wood, P. J., and Hanson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 19, 1977.