BILL LOCKYER Attorney General ANTHONY S. Da VIGO Deputy Attorney General
THE HONORABLE SHARON D. STUART, CITY PROSECUTING ATTORNEY, CITY OF LOMPOC, has requested an opinion on the following question:
May a city prohibit, limit or regulate the operation of a boarding house or rooming house business in a single family home located in a low density residential (R-1) zone, where boarding house or rooming house is defined as a residence or dwelling, other than a hotel, wherein three or more rooms, with or without individual or group cooking facilities, are rented to individuals under separate rental agreements or leases, either written or oral, whether or not an owner, agent, or rental manager is in residence?
 CONCLUSION
A city may prohibit, limit or regulate the operation of a boarding house or rooming house business in a single family home located in a low density residential (R-1) zone, where boarding house or rooming house is defined as a residence or dwelling, other than a hotel, wherein three or more rooms, with or without individual or group cooking facilities, are rented to individuals under separate rental agreements or leases, either written or oral, whether or not an owner, agent or rental manager is in residence, in order to preserve the residential character of the neighborhood.
 ANALYSIS
A city proposes to enact an ordinance prohibiting the operation of a boarding house or rooming house business in a single family home located in a low density residential (R-1) zone. A boarding or rooming house business would be defined under the ordinance as a residence or dwelling, other than a hotel, wherein three or more rooms, with or without individual or group cooking facilities, are rented to individuals under separate rental agreements or leases, either written or oral, whether or not an owner, agent or rental manager is in residence."[1]
We are asked whether the ordinance would be valid. We conclude that a city may prohibit the operation of boarding house businesses in a low density residential zone in order to preserve the residential character of the neighborhood.
It is now well settled that a city has broad authority to adopt zoning ordinances to protect the public health and general welfare of its residents. (See Cal. Const., art. XI, § 7; Gov. Code, §§65800-65912; Euclid v. Ambler Co. (1926) 272 U.S. 365,386-395; Miller v. Board of Public Works (1925) 195 Cal. 477, 484-488.) Municipalities may establish strictly private residential districts as part of a general comprehensive zoning plan. (Wilkins v. City of SanBernardino (1946) 29 Cal.2d 332, 337-338; Fourcade v. City and County ofSan Francisco (1925) 196 Cal. 655, 662; Sutter v. City of Lafayette (1997) 57 Cal.App.4th 1109, 1131[2] "[M]aintenance of the character of residential neighborhoods is a proper purpose of zoning." (Ewing v. Cityof Carmel-by-the-sea, supra, 234 Cal.App.3d at p. 1590.)
More specifically, the courts of this state have stated that the operation of boarding house businesses may be excluded from a residential zone. (City of Santa Barbara v. Adamson (1980) 27 Cal.3d 123, 133 ["To illustrate, `residential character' can be and is preserved by restrictions on transient and institutional uses (hotels, motels, boarding houses, clubs, etc.")]; City of Chula Vista v. Pagard (1981)115 Cal.App.3d 785, 792; see also Seaton v. Clifford (1972)24 Cal.App.3d 46, 51 ["the maintenance of a commercial `boarding house,' . . . which in essence is providing `residence' to paying customers, is not synonymous with `residential purposes' as that latter phrase is commonly interpreted in reference to property use"].) With respect to zoning matters, "[t]he term `residential' is normally used in contradistinction to `commercial' or `business.'" (Sechrist v. MunicipalCourt (1976) 64 Cal.App.3d 737, 746.)
"There is no question but that municipalities are entitled to confine commercial activities to certain districts [citations], and that they may further limit activities within those districts by requiring use permits." (Sutter v. City of Lafayette, supra, 57 Cal.App.4th at p. 1131.) "Many zoning ordinances place limits on the property owner's right to make profitable use of some segments of his property." (KeystoneBituminous Coal Assn. v. DeBenedictis (1987) 480 U.S. 470, 498.) Here, the proposed ordinance would allow property owners to rent to boarders under one or two separate rental agreements. The owners would not be denied all commercial use of their properties. (See Ewing v. City ofCarmel-by-the-sea, supra, 234 Cal.App.3d at pp. 1592-1593.)[3] In short, preserving the residential character of a neighborhood is a legitimate government purpose that may be reasonably achieved by prohibiting commercial enterprises such as operating a boarding house business. (See Euclid v. Ambler Co., supra, 272 U.S. at pp. 394-395; Cityof Santa Barbara v. Adamson, supra, 27 Cal.3d at p. 133; Miller v. Boardof Public Works, supra, 195 Cal. at p. 493; College Area Renters Landlord Assn. v. City of San Diego (1996) 43 Cal.App.4th 677, 687; Ewingv. City of Carmel-by-the-sea, supra, 234 Cal.App.3d at pp. 1590-1592;City of Chula Vista v. Pagard, supra, 115 Cal.App.3d at pp. 792, 799-800.)
The proposed ordinance would not raise constitutional issues of the right of privacy or right of association since it would allow any owner of property to rent to any member of the public and any member of the public to apply for lodging. The proposed ordinance would be directed at a commercial use of property that is inconsistent with the residential character of the neighborhood and which is unrelated to the identity of the users. The courts have approved a distinction drawn that is based upon the commercial use of property by owners in a restricted residential zone. (See City of Santa Barbara v. Adamson, supra, 27 Cal.3d at pp. 129-134; Coalition Advocating Legal Housing Options v. City of SantaMonica (2001) 88 Cal.App.4th 451, 460-464; College Area Renters Landlord Assn. v. City of San Diego (1996) 43 Cal.App.4th 677, 686 687;Ewing v. City of Carmel-by-the-sea, supra, 234 Cal.App.3d at pp. 1595-1598; City of Chula Vista v. Pagard, supra, 115 Cal.App.3d at pp. 791-793, 798.)
We reject the suggestion that the relatively few number of boarders prohibited under the proposed ordinance would prevent the ordinance from being upheld by a court.In City of Santa Barbara v. Adamson, supra,27 Cal.3d 123, the Supreme Court indicated that operating boarding house businesses could be prohibited to preserve the residential character of a neighborhood without specifying that the businesses had to be of a particular size. (Id. at p. 133.) of course, the greater the number of boarders who would occupy a single family dwelling, the more likely the residential character of the neighborhood would be threatened. (See Ewingv. City of Carmel-by-the-Sea, supra, 234 Cal.App.3d at p. 1591.) Without question, operating a boarding house for 20 or 30 boarders would undermine a neighborhood's residential character. Here, the proposed ordinance would prohibit a boarding house business operated for only three boarders. And, as previously observed, the proposed ordinance would allow commercial use of a property if only one or two boarders were renting rooms from the owner. What is the standard of review for evaluating such a legislative determination as to the allowable size of a boarding house business in a restricted residential zone?
"`[A]s is customary in reviewing economic and social regulation, . . . courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure. [Citation.]" (Hall v. Butte HomeHealth, Inc., supra, 60 Cal.App.4th at p. 322.) "[C]ourts ordinarily do not consider the motives behind legislation, including local legislation [citations], nor do they second-guess the wisdom of the legislation [citations]." (Sutter v. City of Lafayette, supra, 57 Cal.App.4th at p. 1128.) "In enacting zoning ordinances, the municipality performs a legislative function, and every intendment is in favor of the validity of such ordinances. [Citations]" (Lockard v. City of Los Angeles (1949)33 Cal.2d 453, 460.) The ordinance will be upheld so long as the issue is "`at least debatable.'" (Minnesota v. Clover Leaf Creamery Co. (1981)449 U.S. 456, 464; see Sutter v. City of Lafayette, supra, 57 Cal.App.4th at p. 1133; Ewing v. City of Carmel-by-the-sea, supra, 234 Cal.App.3d at pp. 1587-1588; Cotati Alliance for Better Housing v. City of Cotati (1983)148 Cal.App.3d 280, 291-292.) In Ewing v. City of Carmel-by-the-Sea,supra, 234 Cal.App.3d 1579, the court summarized the applicable principles with respect to drawing lines of distinction in adopting zoning regulations:
". . . Line drawing is the essence of zoning. Sometimes the line is pencil-point thin — allowing, for example, plots of one-third acre but not one-fourth; buildings of three floors but not four; beauty shops but not beauty schools. In Euclid, the Supreme Court recognized that "in some fields, the bad fades into the good by such insensible degrees that the two are not capable of being readily distinguished and separated in terms of legislation.' (Euclid v. Ambler Co., supra, 272 U.S. at p. 389.) Nonetheless, the line must be drawn, and the legislature must do it. Absent an arbitrary or unreasonable delineation, it is not the prerogative of the courts to second-guess the legislative decision. [Citations.]" (Id. at p. 1593.) It is "at least debatable" that prohibiting boarding house businesses operated for as few as three boarders in a low density residential zone is a reasonable exercise of legislative power. Given that boarding house businesses may be prohibited in low density residential zones, we cannot say, in the abstract, that the proposed ordinance would be "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare." (Euclid v. Ambler Co., supra, 272 U.S. at p. 395; cf.Ewing v. City of Carmel-by-the-sea, supra, 234 Cal.App.3d at pp. 1591-1592.) The line as to the number of allowable boarders must be drawn somewhere, and here the city council may prohibit the ration of boarding house businesses with three or more boarders in order to preserve the residential character of the Neighborhood.
We conclude that a city may prohibit, limit or regulate the operation of a boarding house or rooming house business in a single family home located in a low density residential (R-1) zone, where boarding house or rooming house is defined as a residence or dwelling, other than a hotel, wherein three or more rooms, with or without individual or group cooking facilities, are rented to individuals under separate rental agreements or leases, either written or oral, whether or not an owner, agent, or rental agent is in residence, in order to preserve the residential character of the neighborhood.
[1] A rooming house typically does not provide meals or cooking facilities. For our purposes, however, a rooming house business would be subject to the same analysis as a boarding house business and will thus be included in the term "boarding house" throughout this opinion.
[2] We may assume for purposes of this opinion that the proposed ordinance would be consistent with the city's general plan. (Gov. Code, § 65860; cf. Ewing v. City of Carmel-by-the-sea (1991)234 Cal.App.3d 1579, 1589; see also 81 Ops.Cal.Atty.Gen. 57, 57-61 (1998).) We may also assume that the ordinance would be consistent with state law prohibiting certain group homes from being considered "boarding houses." (See Health Saf. Code, §§ 1500-1567.9; Hall v. Butte Home Health, Inc.
(1997) 60 Cal.App.4th 308, 318-322; City of Los Angelesv. Department of Health (1976) 63 Cal.App.3d 473,477-481; 76 Ops.Cal.Atty.Gen. 173, 175 (1993).)
[3] Of course, the proposed ordinance would apply only to the city's low density residential (R-1) zone and not to multiple dwelling zones or other zoning districts of the city.