NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUN 10 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| NATIONAL FUNDING, INC., a California Corporation,<br><br>                Plaintiff-Appellant,<br><br>  v.<br><br>COMMERCIAL CREDIT COUNSELING SERVICES, INC., DBA Corporate Turnaround, a New Jersey corporation, et al.,<br><br>                Defendants-Appellees. | No.    19-55269<br><br>D.C. No.<br>2:18-cv-06437-MWF-AS<br><br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Michael W. Fitzgerald, District Judge, Presiding

Submitted May 4, 2020[**]
Pasadena, California

Before:  OWENS and BADE, Circuit Judges, and MOSKOWITZ,[***] District Judge.

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[***]      The Honorable Barry Ted Moskowitz, United States District Judge for the Southern District of California, sitting by designation.

Plaintiff-Appellant National Funding, Inc. appeals the dismissal of its second amended complaint with prejudice and without leave to amend for failure to state a claim upon which relief can be granted against Defendants-Appellees Commercial Credit Counseling Services, Inc. d/b/a Corporate Turnaround and Bruce Putterman. As the parties are familiar with the facts, we do not recount them here.[1] We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part, vacate in part, and remand for further proceedings.

"We review dismissals under Rule 12(b)(6) *de novo*, accepting as true all well-pleaded allegations of fact in the complaint and construing them in the light most favorable to the plaintiff[]." *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001). "We can affirm a 12(b)(6) dismissal 'on any ground supported by the record, even if the district court did not rely on the ground.'" *United States v. Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011) (quoting *Livid Holdings, Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 950 (9th Cir. 2005)). Further, "[i]n a case requiring a federal court to apply California law, the court 'must apply the law as it believes the California Supreme Court would apply it.'" *Kairy v. SuperShuttle Int'l*, 660 F.3d 1146, 1150 (9th Cir. 2011) (quoting

---

[1] Defendants-Appellees ask us to take judicial notice of several documents on appeal pursuant to the incorporation-by-reference doctrine and Federal Rule of Evidence 201(b). Because we would reach the same conclusions regardless of whether we considered such documents, the request for judicial notice on appeal is denied as moot.

*Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003)). "In the absence of a controlling California Supreme Court decision, the panel must predict how the California Supreme Court would decide the issue, using intermediate appellate court decisions, statutes, and decisions from other jurisdictions as interpretive aids." *Id.* (quoting *Gravquick A/S*, 323 F.3d at 1222).

"We review a denial of leave to amend a complaint for an abuse of discretion." *Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 725 (9th Cir. 2000). "A district court acts within its discretion to deny leave to amend when amendment would be futile, when it would cause undue prejudice to the defendant, or when it is sought in bad faith." *Id.* at 725-26. Nevertheless, dismissal without leave to amend based upon futility "is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam).

1.      The district court did not err when it concluded that National Funding failed to sufficiently plead a claim for intentional interference with contractual relations. In California, this claim "requires allegations of the following elements: '(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.'" *CRST Van Expedited, Inc. v. Werner*

*Enters., Inc.*, 479 F.3d 1099, 1105 (9th Cir. 2007) (quoting *Quelimane Co. v. Stewart Title Guar. Co.*, 960 P.2d 513, 530 (Cal. 1998)). Although we disagree with the district court's assessment that National Funding failed to plead how the Defendants-Appellees "would have known about the" subject loan agreements because we conclude such knowledge is reasonably inferred from the nature of the debt-renegotiation scheme alleged in the second amended complaint, we agree that National Funding failed to sufficiently plead the validity of the loan agreements.

In California, "[w]here a contract is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained, the contract is void and unenforceable." *Cal. Lettuce Growers, Inc. v. Union Sugar Co.*, 289 P.2d 785, 790 (Cal. 1955). "Typically, a contract involving a loan must include the identity of the lender and borrower, the amount of the loan, and the terms for repayment in order to be sufficiently definite." *Daniels v. Select Portfolio Servicing, Inc.*, 201 Cal. Rptr. 3d 390, 413 (Ct. App. 2016); *see also Kruse v. Bank of Am.*, 248 Cal. Rptr. 217, 230 (Ct. App. 1988) ("essential terms" of a loan agreement include "the amount of the loan, the rate of interest, the terms of repayment, [and the] applicable loan fees and charges"). Because National Funding failed to plead these essential terms of the relevant loan agreements with sufficient definiteness, it failed to plead the first element of its intentional interference claim. *See PMC, Inc. v. Saban Entm't, Inc.*, 52 Cal. Rptr. 2d 877, 890

4

(Ct. App. 1996) ("[A] cause of action for intentional interference with contract requires an underlying *enforceable* contract."), *disapproved of on other grounds by Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937 (Cal. 2003).

2.     The district court did not err when it concluded that National Funding failed to sufficiently plead a claim for violation of California's Unfair Competition Law (UCL) based upon the Defendants-Appellees' unlawful intentional interference with the loan agreements.  As recognized by the district court below and the parties on appeal, this UCL claim is derivative of National Funding's intentional interference with contractual relations claim.  *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) ("The UCL 'borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.'" (quoting *Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539 (Cal. 1999))).  Because we conclude that National Funding failed to sufficiently plead its predicate claim of intentional interference with contractual relations, we likewise conclude that National Funding failed to sufficiently plead this derivative UCL claim.

3.     The district court did not err when it concluded that National Funding failed to sufficiently plead a claim for violation of the UCL based upon Putterman's alleged practice of law in violation of California Business & Professions Code § 6125.  In California, the "practice of law" includes "the doing or performing

5

services in a court of justice in any matter depending therein, throughout its various stages," as well as the provision of "legal advice and counsel and the preparation of legal instruments and contracts by which legal rights are secured although such matter may or may not be depending in a court." *Baron v. City of Los Angeles*, 469 P.2d 353, 357 (Cal. 1970) (internal quotation marks and citations omitted). As recognized by the district court, National Funding failed to sufficiently identify the substance of Putterman's discussions with its borrowers to make plausible its assertion that he provided legal advice to them. Even assuming such discussions touched upon matters of legal import, National Funding failed to allege facts demonstrating that the relevant issues were so "difficult or doubtful" that they "reasonably demand[ed] the application of a trained legal mind." *Id.* at 358 (internal quotation marks and citations omitted). And while "engaging in negotiations with opposing counsel concerning settlement" of a legal dispute can, in some instances, "constitute[] the practice of law," *Morgan v. State Bar*, 797 P.2d 1186, 1188 (Cal. 1990), National Funding's allegations concerning its negotiations with Putterman fail to demonstrate that "no discussion[s] . . . would be possible without reference to legal issues and no persuasive argument could be made which did not include a discussion of legal principles[,]" *Zelkin v. Caruso Discount Corp.*, 9 Cal. Rptr. 220, 224 (Ct. App. 1960), or that these negotiations otherwise required "the application of legal knowledge and technique[,]" *Baron*, 469 P.2d at

6

358.  Nor do National Funding's allegations demonstrate that Putterman prepared any legal instruments, or performed any actions with regard to any pending litigation, in connection with such negotiations.  *See Morgan*, 797 P.2d at 1188 ("[W]e conclude that engaging in negotiations with opposing counsel concerning settlement *and* agreeing that the case should be continued until a later date, constitutes the practice of law." (emphasis added)); *Baron*, 469 P.2d at 357.  Here, in regard to litigation, National Funding alleges that Putterman attempted to negotiate a payment schedule for R. Makabali, MD Inc. (Makabali).  But, by itself, this is not the practice of law.

Even assuming that National Funding's allegations demonstrate Putterman engaged in the practice of law, however, they nonetheless fail to plausibly demonstrate that he did so "in California."  *See Birbrower, Montalbano, Condon & Frank v. Superior Court*, 949 P.2d 1, 5-6 (Cal. 1998), *as modified* (Feb. 25, 1998) (explaining that a violation of section 6125 requires that practice of law occur in California).  For example, National Funding does not allege whether any of Putterman's challenged conduct occurred while he was physically present in California.  Further, except for the two emails sent by Putterman to National Funding regarding Makabali in April 2018, National Funding does not allege any non-conclusory facts demonstrating the frequency with which Putterman's purported practice of law involved "virtual" entry into California.  *See id.* ("[W]e

7

. . . reject the notion that a person *automatically* practices law 'in California' whenever that person practices California law anywhere, or 'virtually' enters the state by telephone, fax, e-mail, or satellite.").

Moreover, other than as to Makabali, National Funding failed to allege the relevant borrowers' states of residence or the law governing their respective loan agreements, and therefore it is unclear whether Putterman's provision of advice or his negotiations with National Funding concerned California borrowers or matters of California law. *See id.* at 5 ("Mere fortuitous or attenuated contacts will not sustain a finding that the unlicensed lawyer practiced law 'in California.' The primary inquiry is whether the unlicensed lawyer engaged in sufficient activities in the state, or created a continuing relationship with the California client that included legal duties and obligations."). Because National Funding failed to plead Putterman's predicate unauthorized practice of law in California, the district court properly dismissed this UCL claim. *See Wilson*, 668 F.3d at 1140.

4.      The district court did not err when it denied National Funding leave to amend its unlicensed practice of law UCL claim, but did err when it denied National Funding leave to amend its intentional interference with contractual relations claim and related UCL claim. In denying National Funding leave to amend, the district court stated that its prior order dismissing the first amended complaint with leave to amend "pointed out the deficiencies that have not been

corrected" in the second amended complaint and had "warned that any future successful motion to dismiss would be granted without leave to amend."

On the unlicensed practice of law UCL claim, we agree National Funding's second amended complaint failed to cure the deficiencies explicitly identified by the district court in its prior order, namely the absence of facts demonstrating Putterman's interpretation of law or application of law to facts in either his provision of advice to borrowers or negotiations with National Funding. Nor has National Funding alleged, even in a conclusory fashion, that Putterman performed any actions that would constitute the practice of law in any pending litigation or prepared any legal instruments in connection with his dealings with National Funding or its borrowers. Given that National Funding has failed to delineate any additional facts it would add in support of this claim to cure these deficiencies if given leave to amend, we conclude that National Funding cannot save this claim by amendment and therefore the district court did not abuse its discretion in denying leave to amend.

But with regard to National Funding's intentional interference claims, the second amended complaint corrected the only deficiencies explicitly identified by the district court in its prior order, specifically National Funding's failure to "supply . . . the identity of any third party with whom it had contracted" and provide a "factual basis for [the] conclusory assertion" that the loan agreements

9

would not have been breached but for the Defendants-Appellees' interference. And although we agree with the district court that National Funding's allegations on the material terms of the loan agreements are insufficient, the district court did not make it clear in its prior order that it considered such allegations deficient and the underlying record reflects that National Funding could easily plead such information if given leave to amend. Because it is not clear that further amendment of these claims would be futile, the district court abused its discretion in denying leave to amend on the predicate intentional interference with contractual relations claim and the derivative UCL intentional interference claim. *See Eminence Capital, LLC*, 316 F.3d at 1052.

Based upon the foregoing, we vacate the district court's dismissal with prejudice and without leave to amend the second amended complaint's intentional interference with contractual relations claim and derivative UCL intentional interference claim and remand this action to the district court for further proceedings. Each party shall bear their own costs on appeal.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**