Filed 10/8/21  Ablesoft v. Walt Disney Company CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| ABLESOFT, INC.,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>THE WALT DISNEY COMPANY et al.,<br><br>    Defendants and Respondents. | B304155<br><br>(Los Angeles County Super. Ct. No. BC673736) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Dalila C. Lyons, Judge.  Reversed and remanded with directions.

Hamrick & Evans, A. Raymond Hamrick III, Charles Rainey and Jonathan Dutton for Plaintiff and Appellant.

Mitchell Silberberg & Knupp, Lucia E. Coyoca and Christopher A. Elliott for Defendants and Respondents.

Ablesoft, Inc. (Ablesoft) was one of several plaintiffs who sued defendants The Walt Disney Company and Buena Vista Television, LLC, formerly known as Buena Vista Television, Inc. (collectively, Buena Vista),[1] for breach of contract and related causes of action. The trial court granted Buena Vista's motion for summary adjudication against Ablesoft as to all its causes of action on the ground that Ablesoft lacked standing to sue. We reverse.[2]

## BACKGROUND

### A. Underlying Facts

On March 31, 1993, William Nye, James McKenna, Erren Gottlieb, KCTS-TV, and Rabbit Ears Productions, Inc. (Rabbit Ears) entered into an agreement with Buena Vista (BV Agreement) for 50 percent of the net profits resulting from the production and distribution of the television series, *Bill Nye the Science Guy* (series).

Millennium Media Group Holdings, Inc. (MMG) purportedly made a loan to Rabbit Ears in September 1993 secured by a lien on Rabbit Ears's assets. When Rabbit Ears apparently defaulted on the loan, MMG foreclosed the lien in 1997 and reportedly sold Rabbit Ears's assets to Microleague

---

[1] Buena Vista Television, LLC is a subsidiary of The Walt Disney Company.

[2] Because we conclude summary adjudication should not have been granted, we do not reach Ablesoft's contention the trial court abused its discretion by denying a second continuance of the summary adjudication hearing. We do, however, briefly summarize Ablesoft's two requests for a continuance to provide a clear understanding of the proceedings.

Multimedia, Inc. (Microleague) in February 1997. The sale was said to include Rabbit Ears's rights under the BV Agreement.

Ablesoft purportedly was a wholly owned subsidiary of Microleague. In December 1997, Microleague declared bankruptcy. Ablesoft apparently emerged as the surviving company, owning all of Rabbit Ears's rights under the BV Agreement.

On April 29, 1999, Buena Vista drafted an amendment (1999 Amendment) to the BV Agreement. Rabbit Ears was replaced as a signatory by "Microleague Multimedia, Inc., successor and assignee to the interests of Rabbit Ears Productions, Inc." Buena Vista, Microleague, and the other parties executed the 1999 Amendment.

In 2006, John Herson purchased Ablesoft from the "Penn Janney" fund. Shortly thereafter, CEO Herson received a check from Disney in connection with the series. Herson contacted a Buena Vista (Disney) representative to ask about the payment. In response, the representative provided Herson with a copy of the BV Agreement.

From at least 2006 through 2018, Buena Vista issued accounting statements pursuant to the BV Agreement, replacing Microleague with Ablesoft as a paid participant for the series. To date, Buena Vista has paid Ablesoft nearly $1 million under the BV Agreement.

## B. Underlying Proceedings

A lawsuit was filed against Buena Vista following its purported failure to account for and pay profits from the exploitation of the series pursuant to the terms and conditions of the BV Agreement. The operative pleading was the fourth amended complaint. Plaintiffs were Nye, McKenna, Gottlieb,

3

KCTS-TV, and "Ablesoft, Inc. [formerly known as] Rabbit Ears Productions Inc." Plaintiffs alleged that Ablesoft was a successor in interest to Rabbit Ears. The complaint stated causes of action for fraudulent concealment, fraudulent misrepresentation, fraudulent inducement/false promise, breach of contract, breach of fiduciary duty, accounting, breach of the covenant of good faith and fair dealing, and monies had and received.

Buena Vista filed two motions for summary adjudication of plaintiffs' causes of action.[3] In one of the motions, Buena Vista asserted Ablesoft did not have standing to sue because it was not a party to the BV Agreement. Nor could Ablesoft show it was a successor-in-interest to Rabbit Ears's rights because there was no admissible evidence of the transfer of assets "from Rabbit Ears to MMG or from Microleague to Ablesoft."

Ablesoft filed opposition and evidence to support standing. The hearing was to occur on August 7, 2019.

Plaintiffs filed an ex parte application to continue the summary adjudication hearing to obtain additional discovery. The trial court granted the continuance over Buena Vista's objections.

At the continued hearing on October 24, 2019, the trial court issued a tentative ruling granting Buena Vista's summary adjudication against Ablesoft. In response, Ablesoft's counsel orally moved for a continuance to obtain further discovery on the issue of standing and/or to present certain newly discovered evidence to demonstrate standing. The court agreed to continue

---

[3] Because of the nature of the summary adjudication proceedings in this case, we merely summarize them here. For clarity and to avoid repetition, we address them at length in the next section.

4

the hearing to allow Ablesoft to file a properly noticed motion pursuant to Code of Civil Procedure section 437c, subdivision (h).[4]

At the December 4, 2019 summary adjudication hearing, the trial court denied Ablesoft's noticed motion to continue and granted Buena Vista's motion for summary adjudication on the issue of Ablesoft's standing.  The court entered judgment on January 22, 2020, against Ablesoft and in favor of Buena Vista on all causes of action.  Ablesoft filed a timely notice of appeal.

## DISCUSSION

### A. Standing

"Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute." (§ 367.)  "It is elementary that a party asserting a claim must have standing to do so.  In asserting a claim based upon a contract, this generally requires the party to be a signatory to the contract, or to be an intended third party beneficiary." (*Berclain America Latina v. Baan Co.* (1999) 74 Cal.App.4th 401, 405.)

### B. Summary Adjudication and Standard of Review

"A motion for summary adjudication may be made by itself or as an alternative to a motion for summary judgment and shall proceed in all procedural respects as a motion for summary judgment." (§ 437c, subd. (f)(2).)

The trial court must grant summary judgment when the moving and opposition papers demonstrate that there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (§ 437c, subd. (c).)  A defendant

---

[4] Undesignated statutory references are to the Code of Civil Procedure.

5

moving for summary judgment has the initial burden of producing evidence that a cause of action lacks merit because the plaintiff cannot establish an element of the cause of action or there is a complete defense. (§ 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853; *Husman v. Toyota Motor Credit Corp.* (2017) 12 Cal.App.5th 1168, 1179–1180.) If the defendant meets this initial burden, the burden then shifts to the plaintiff to produce evidence showing there is a triable issue of material fact. (§ 437c, subd. (p)(2); *Aguilar, supra,* at p. 850; *Husman, supra,* at pp. 1179–1180.)

An appellate court reviews an order granting summary judgment de novo. (*Coral Construction, Inc. v. City and County* of *San Francisco* (2010) 50 Cal.4th 315, 336.) In determining whether there are triable issues of material fact, we consider all the evidence set forth by the parties, except that to which objections have been made and properly sustained. (§ 437c, subd. (c); *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) We accept as true the facts supported by plaintiff's evidence and the reasonable inferences therefrom (*Sada v. Robert F. Kennedy Medical Center* (1997) 56 Cal.App.4th 138, 148), resolving evidentiary doubts or ambiguities in plaintiff's favor (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768).

C. **Buena Vista Meets Its Initial Burden Showing Ablesoft Lacks Sufficient Evidence of Standing**

In moving for summary adjudication against Ablesoft, Buena Vista need not conclusively show Ablesoft's lack of standing, but could establish that Ablesoft "does not possess, and cannot reasonably obtain, needed evidence" to support standing. (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 854; see *Henderson v. Equilon Enterprises, LLC* (2019) 40 Cal.App.5th

6

1111, 1116 ["[t]o meet its initial burden in moving for summary judgment, a defendant must present evidence that either 'conclusively negate[s] an element of the plaintiff's cause of action' or 'show[s] that the plaintiff does not possess, and cannot reasonably obtain,' evidence necessary to establish at least one element of the cause of action"].)

In its motion, Buena Vista argued the following evidence that Ablesoft had produced during discovery was either insufficient and/or inadmissible to show its standing as a successor-in-interest to Rabbit Ears:  (1) A 1997 press release announcing Microleague's acquisition of Rabbit Ears from MMG and (2) a printout of an uncertified Form 8-K[5] from Microleague, attached to which was an unsigned asset acquisition agreement between MMG and Microleague.  The unsigned agreement included a "Background" description of MMG's earlier acquisition of Rabbit Ears.  Buena Vista further argued that Ablesoft's current CEO, when deposed by Buena Vista, testified he acquired Ablesoft in 2006 and had no personal knowledge or documentation of MMG's original acquisition of Rabbit Ears's assets or of Microleague's acquisition of Rabbit Ears's assets from MMG.  Buena Vista maintained because Ablesoft could not and did not obtain the necessary evidence of its status as a successor-in-interest under the BV Agreement, Ablesoft did not have standing to sue.

---

[5] A "Form 8-K is the 'current report' companies must file with the SEC to announce major events that shareholders should know about."  (Securities and Exchange Com., Form 8-K <https://www.sec.gov/fast-answers/answersform8khtm.html> [as of Oct. 1, 2021], archived at <https://perma.cc/DJ4X-WR6A>; see *Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 281.)

The trial court later sustained Buena Vista's objections to the evidence Ablesoft had produced during discovery as inadmissible for foundational and hearsay reasons. Ablesoft does not challenge this ruling on appeal.

**D.    The Burden Shifts to Ablesoft, and the Trial Court Grants Summary Adjudication**

The burden shifted to Ablesoft to demonstrate a triable issue of material fact as to standing. (§437c, subd. (p)(2).)

In its opposition to the summary adjudication motion and in later filings in conjunction with its second continuance request, Ablesoft presented the following evidence: (1) CEO Herson's declaration describing his understanding of the chain of title; (2) a copy of the 1999 Amendment, and (3) certified copies of the Form 8-K and "Articles of Amendment–Domestic Business Corporation" (Articles of Amendment), which Microleague had filed in November 1998 with the Pennsylvania Department of State reflecting its name change to Ablesoft. In a separate statement, Ablesoft identified three facts unopposed by Buena Vista: (1) Buena Vista had been issuing annual accounting statements to Ablesoft from at least 2006 to the present (i.e., for the last 15 years), (2) during that same period, Disney (Buena Vista) continued to send Ablesoft profit participation statements and checks for the series, and (3) when CEO Herson questioned Ablesoft's entitlement to a 2006 check, a Disney representative responded with a copy of the BV Agreement. Ablesoft also asked the trial court to take judicial notice of the certified copies of the Form 8-K and the Articles of Amendment.

Following the hearing on December 4, 2019, the trial court issued a written ruling denying Ablesoft's motion to continue and refusing to admit into evidence the newly certified copies of the

8

Form 8-K and the Articles of Amendment. The court granted Ablesoft's request for judicial notice of the certified copies of the Articles of Amendment and Form 8-K, excluding any hearsay statements they may contain. Thus, as a result of these and other evidentiary rulings, Ablesoft was left with the three undisputed facts concerning Buena Vista's accounting and payments to Ablesoft, the 1999 Amendment, and the judicially noticed Articles of Amendment and Form 8-K in opposing Buena Vista's motion for summary adjudication.

In a separate written ruling, the trial court granted Buena Vista summary adjudication against Ablesoft for lack of standing. The court found Ablesoft had no "competent evidence" it was the successor-in-interest to signatory Rabbit Ears. The court reasoned that even if the excluded Form 8-K and Articles of Amendment were considered, Ablesoft would still be unable to supply the missing links in the chain of Ablesoft's title to Rabbit Ears's rights: (1) MMG's acquisition of Rabbit Ears's rights and (2) Ablesoft's acquisition of Rabbit Ears's rights from Microleague.

## E. Triable Issues of Fact Preclude Summary Adjudication Regarding Ablesoft's Standing

The issue on appeal is whether Ablesoft met its burden by producing sufficient evidence from which a trier of fact could reasonably infer Ablesoft had standing to pursue this suit. (*Sharufa v. Festival Fun Parks, LLC* (2020) 49 Cal.App.5th 493, 497 [to determine whether a "defendant is entitled to summary [judgment] . . . we review the entire record and ask whether a reasonable trier of fact could find in plaintiff's favor"].) Because our review is de novo, we can independently consider admissible evidence even though the trial court did not consider it.

9

(*Tchorbadjian v. Western Home Ins. Co.* (1995) 39 Cal.App.4th 1211, 1217 [court reviewing summary judgment must consider all evidence presented "except where objections are properly sustained"].) Accordingly, we consider the 1999 Amendment even though the trial court disregarded it.

The record reveals Ablesoft's engaged in a two-fold approach in opposing Buena Vista's summary adjudication motion. To show triable issues relative to standing, Ablesoft presented evidence (1) supplying the missing evidentiary links in the chain of title to Rabbit Ears's rights and (2) demonstrating by Buena Vista's express agreement and course of conduct that Ablesoft was a proper party under the BV Agreement. As the evidence in support of Ablesoft's first approach was excluded, we examine Ablesoft's evidence in support of the second approach—the 1999 Amendment, the judicially noticed Articles of Amendment, and Buena Vista's 15-year accounting and payment practices with respect to Ablesoft. From this evidence a reasonable trier of fact could find in Ablesoft's favor.[6]

The identity of the parties to a contract, along with other contractual terms, are shown by the language of the contract and admissible parol evidence. (See *Zelkin v. Caruso Discount Corp.* (1960) 186 Cal.App.2d 802, 806–807 [identities of real parties in interest under a contract were "clearly revealed by parol evidence"].) And the "[a]cts of the parties, subsequent to the execution of the contract and before any controversy has arisen as to its effect, may be looked to in determining the meaning." (1 Witkin, Summary of Cal. Law (11th ed. 2017) Contracts, § 772,

---

[6] We do not consider Evidence Code section 622, which Ablesoft raised for the first time in its reply brief on appeal. (See *Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764–765.)

10

p. 828; see also *Fisher v. Allis-Chalmers Corp. Product Liability Trust* (2002) 95 Cal.App.4th 1182, 1190–1192 [evidence of successor corporation's conduct was relevant to determine whether it agreed to assume liability for the plaintiff's claim].) This rule is not limited to joint conduct by parties to a contract, but applies also to the acts of one party with knowledge of the contract terms. (*Southern Cal. Edison Co. v. Superior Court* (1995) 37 Cal.App.4th 839, 851; see also *Sanfran Co. v. Rees Blow Pipe Mfg. Co.* (1959) 168 Cal.App.2d 191, 205 ["knowledge by any agent of the corporation, whether presently an officer or not, is the knowledge of the corporation"].)

Buena Vista expressly agreed in the 1999 Amendment that Microleague was a party to the contract. Buena Vista drafted and executed that amendment, which stated that Microleague was the "successor and assignee to the interests of [Rabbit Ears]." Whether this statement is considered as contractual language in its own right or simply as a statement by a party to the contract interpreting the BV Agreement's terms, it is powerful evidence of Microleague's status as the contractual party to which Buena Vista owed its obligations, and a jury could reasonably so find.

Ablesoft also produced sufficient evidence showing that it was the same entity as Microleague. The judicially noticed Articles of Amendment documented Microleague's name change to Ablesoft. " 'It is the consequence of judicial notice that the "fact" noticed is, in effect, treated as true for purposes of proof.' [Citation.] "Thus, '[j]udicial notice has been characterized as a "substitute for formal proof." ' " (*People v. Moore* (1997) 59 Cal.App.4th 168, 185.)

Moreover, Buena Vista actually *paid* Ablesoft nearly $1 million under the BV Agreement for 15 years, for which it also

furnished Ablesoft with an annual accounting and regular profit participation statements, apparently without objection by any other person or entity. This course of conduct was consistent and it was evidence that Ablesoft's status as a party to the contract was a triable issue.

Buena Vista argues this evidence fails to raise a triable issue of fact. Buena Vista makes much of Ablesoft's belated reliance on the 1999 Amendment as evidence of its standing.[7] But, as Buena Vista acknowledges, the trial court did not even consider this evidence. Buena Vista also makes the rather surprising assertion that the 1999 Amendment would have been properly excluded as inadmissible hearsay relative to standing. This was Buena Vista's evidence, submitted in support of its summary adjudication motions. Buena Vista cannot have it both ways: Buena Vista cannot claim the 1999 Amendment is admissible when the evidence buttresses its position, but then claim the evidence is inadmissible when it undermines Buena Vista's position.

Additionally, Buena Vista maintains the 1999 Amendment cannot be viewed as reflecting its intent or agreement that Microleague is Rabbit Ears's successor-in-interest, but merely Buena Vista's "belief" based on Ablesoft's representations. During oral argument before this court, Buena Vista's appellate

---

[7] Ablesoft did not refer to the 1999 Amendment in its opposition to Buena Vista's summary adjudication motion. The 1999 Amendment was first mentioned in counsel's declaration in support of Ablesoft's second request for a continuance. It was argued for the first time as evidence of standing in Ablesoft's reply to Buena Vista's opposition to the second request for a continuance.

12

counsel made a similar point when asked about Buena Vista's 15 years of profit payments to Ablesoft.  Counsel explained Buena Vista made the payments in the mistaken belief that Ablesoft was a proper party under the BV Agreement as represented by Ablesoft.  Buena Vista's belief and intent and Ablesoft's entitlement to payments under the BV Agreement are triable issues of fact.

Finally, Buena Vista argues its payment history cannot prevent it from challenging Ablesoft's standing because of waiver or equitable estoppel.  We agree that neither applies in this case.[8]

---

[8] For the first time Ablesoft argues the applicability of Evidence Code section 622 in its reply brief.  Under the circumstances, we will not consider it.

## DISPOSITION

The judgment is reversed, and the matter is remanded for further proceedings on Ablesoft's complaint.  Ablesoft is to recover its costs on appeal.

LUI, P. J.

We concur:

ASHMANN-GERST, J.

CHAVEZ, J.

14